ROLKOSKY v. ROLKOSKY.

No. 41057            July 2, 1959            113 So. 2d 661

*Jules Schwan, Albert S. Johnston, Jr., Howard Mc-Donnell, Arnaud Lopez,* Biloxi, for appellant.

*Gaston Hewes, Jo Drake Arrington,* Gulfport, for appellee.

HOLMES, J.

James Rolkosky died intestate on August 9, 1957 at the age of approximately ninety years. He left surviving him as his sole and only heirs at law his widow, Mrs. Jeanette Rolkosky, two sons, Anthony and Alex Rolkosky, two daughters, Josephine Rolkosky and Mrs. Frances Rolkosky Olander, and a grandson, Wilbur Barry. Jeanette Rolkosky was the second wife of the deceased, to whom he was married in about the year 1931 or 1932. The children of the deceased were born of a former marriage. At the time of the deceased's death, Josephine, who was then about 50 years of age, was in the Mississippi State Hospital at Whitfield for treatment for a nervous condition, where she had been for about two months. Mrs. Jeanette Rolkosky, the widow of the deceased, qualified as the administratrix of the deceased's estate.

On August 28, 1957, Mrs. Jeanette Rolkosky, as administratrix, filed in the Chancery Court of Harrison County what she styled a "petition in discovery proceeding—to recover assets of estate." All of the heirs of the deceased were named as respondents to the petition. The petition alleged that after the death of James Rolkosky, a large sum of cash money was found in coffee cans and boxes in the house in Biloxi which was being occupied by the deceased and his wife and his daughter, Josephine; that during the lifetime of the deceased, he and his wife and Josephine agreed to save and keep their money and earnings in the house where they resided in the City of Biloxi, and that the money so kept was in currency and coins and was kept in coffee cans, boxes, and inside mattresses; that the money so accumulated and saved was the property of James Rolkosky and his wife and his daughter Josephine, and that it was commingled by and with the consent of the owners. The petition prayed that the heirs be cited and that the court examine into the matter for the purpose of determining the rights of the respective parties with respect to said money. The money, on being counted after its discovery, developed to be $21,634.65.

Josephine Rolkosky, the appellee here, filed an answer to the petition, wherein she denied that there was any agreement between her and her father and Mrs. Jeanette Rolkosky to keep their money together, and denied that their money was commingled by consent of herself and her father and Mrs. Jeanette Rolkosky. On the contrary, she averred that the aforesaid money was found in her room and in her cedar chests, and that she was the sole owner thereof, and that neither the estate of her deceased father nor Mrs. Jeanette Rolkosky, nor anyone else, had any interest therein.

Anthony Rolkosky and Wilbur Barry, a son and grandson respectively of the deceased, answered the petition and admitted that the money in question belonged to Josephine.

Alex Rolkosky filed an answer to the petition wherein he averred that the money in question belonged to the estate of the deceased and the widow of the deceased and Josephine, the daughter of the deceased.

On the hearing of the petition, the administratrix sought by her proof to establish the fact, notwithstanding the contrary allegations of her petition, that Josephine had wilfully and tortiously commingled the monies belonging to her, her father, and her step-mother with the result that Josephine should be denied any interest therein. The proof on behalf of Josephine sought to establish that she was the sole owner of the money. At the close of the testimony, and after the cause had been submitted to the chancellor, and after he had rendered his oral decision and had filed his findings of fact and conclusions of law, the appellant filed a motion seeking to have the chancellor file additional findings of fact, and also filed a motion to amend the allegations of the petition to conform to the proof. Both of these motions were overruled, and the chancellor rendered his final decree adjudging Josephine Rolkosky, the appellee here, to be the sole owner of the money in question. From this decree the appellant prosecutes this appeal.

The appellant assigns as error (1) that the chancellor's findings of fact are manifestly wrong; (2) that the court erred in overruling her motion seeking to have the chancellor make additional findings of fact, and (3) that the court erred in overruling the appellant's motion to be permitted to amend the allegations of the petition to conform to the proof.

██ █ We relate the material facts, as disclosed by the evidence, relative to the determination of the issue as to whether the chancellor's findings of fact are manifestly wrong.

The Rolkosky family were a family of seafood workers, who had for years worked in seafood factories in

the Point Cadet area in Biloxi. James Rolkosky and his family had for many years occupied a two-story dwelling. His children were reared in this dwelling. He was twice married, his second wife being Mrs. Jeanette Rolkosky. They were a thrifty and frugal people. Josephine Rolkosky began work in the seafood factories when she was about eight years of age. She was so small that she had to stand on a box to shuck oysters and pick shrimp. She was an industrious and fast worker for more than forty years, with few intervals of any great extent. She went from factory to factory engaging in her work. According to her testimony, she saved her money, and in the last few years preceding the death of her father she kept the money in her room in two cedar chests. She earned, according to her testimony, from $750 to $800 annually. Jeanette Rolkosky and James Rolkosky were slow workers. James had ceased work about eight or ten years prior to his death. Jeanette had ceased to work about three or four years prior to her husband's death. After the children grew up, James and Jeannette and Josephine occupied the two-story home in Biloxi and continued to occupy it until it was destroyed by the 1947 hurricane. After it was destroyed, James rebuilt a three-room ''shotgun'' type house on the same site, and he and his wife, Jeanette, and Josephine occupied the same. The front room was occupied by James and his wife, the middle room by Josephine, and the kitchen was shared equally by the three of them. They also shared the grocery expense, which Josephine said cost her approximately $6.00 per week. None of the three parties deposited their money or earnings in the bank. James kept his money in cigar boxes and in dresser drawers and in a suitcase under his bed. Jeanette kept her money in a trunk in a shed behind the house. Josephine kept her money in two small cedar chests. At the time the money was found, the silver money was in two large coffee cans in the larger cedar

chest and the paper money was in the smaller cedar chest wrapped in cloth and strings, etc. Just before the 1947 hurricane broke, Josephine removed her money from the old home, and with the assistance of her brother, Anthony, carried it to the home of her brother, Alex. In this way her money was saved from the hurricane. Just how much money James had at the time of the hurricane, or Jeanette had at the time of the hurricane, is not shown by any definite proof. There is testimony that both James' money and Jeanette's money were swept away by the hurricane, and that both of them lost all of their money in the hurricane. One witness testified that Jeanette admitted to him that her money was lost. There was proof, too, that James lost a considerable portion of his money in making loans to other parties, and in investing in stocks and bonds which proved unprofitable.

James died on a Friday night. On the night of his death, Wilbur Barry, his grandson, suggested to Jeanette that she accompany him home and spend the night at his house, and this she did. The next day, Jeanette's sister, a Mrs. Wren, came for her to take her to Mrs. Wren's home. On Monday night following the death of James on Friday night, Jeanette, Mrs. Wren, Mrs. Wren's daughter, and Anthony and Alex Rolkosky went to the home where James had lived at the time of his death. They went in the home and went into the room of Josephine, which was the middle room, and there they found the money hereinbefore referred to in two cedar chests. Anthony said in the presence of those who were there that the money was Josephine's. There was no denial of this by Jeanette or anyone else. The two cedar chests were taken to the factory of William C. Cruso, where they were placed in Mr. Cruso's safe. The following morning the same parties took the money to the Peoples' Bank in Biloxi where it was counted by the assistant cashier, L. M. Page, with the help of

another official of the bank. Mr. Page inquired if it should be kept separate, and Anthony Rolkosky said, ''No, it all goes in the same pot.'' There was no contradiction of this statement by Alex, or by Jeanette, in whose presence it was made, or by anyone else. The money was accordingly counted by the bank officials and then deposited in the bank to the credit of the administratrix subject to a joint control agreement for withdrawal.

The testimony of Josephine as to her ownership of the money was positive. She was corroborated in a measure by Anthony Rolkosky and Wilbur Barry, both of whom were testifying against their own interests since they were heirs of the estate of the deceased. There were contradictions and conflicts in the testimony, and the chancellor found from the mass of evidence introduced that the money in question belonged to Josephine, and entered his decree accordingly. The appellant here contends that the chancellor's findings are manifestly wrong. We would not be warranted under the proof in this case in so holding. It is clear to us that the chancellor's findings are amply supported by the evidence and that we are not warranted in disturbing them upon the ground that they are manifestly wrong.

The appellant further contends that the chancellor erred in overruling her motion to amend her petition to conform to the proof. This motion was prompted by the fact that there was a variance between the allegations of the petition and the proof for the appellant in that the petition alleged that the money referred to belonged jointly to James, Jeanette and Josephine, and was commingled by Josephine with the consent and agreement of all three parties. The motion was filed after the cause was submitted and the chancellor had announced his decision. The trial of this case lasted a little more than a week. The variance developed early in the trial. Notwithstanding this fact, no application to make the amendment was made by the appellant

until after the cause was submitted on its merits and the court had announced its decision. ■■ ■ We do not think that the appellant, in delaying the filing of her application to amend, met the requirements of due diligence. Griffith, Mississippi Chancery Practice, 2d ed., Section 392. Further than that, the chancellor held that the amendment even if permitted would not result in any change in the decree.

■■ ■ Griffith, Mississippi Chancery Practice, 2d ed., Section 391, announces the rule that if the amendment would be unavailable to change the result of a case, it would be idle to allow it and therefore will not be allowed. It is too well established to require the citation of authorities that amendments in pleadings are matters which address themselves in large measure to the judicial discretion of the trial court. We find no abuse of the chancellor's discretion in denying the motion to amend in the instant case.

■■ ■ It is further contended by the appellant that the chancellor erred in overruling her motion for additional findings of fact. This Court has definitely held that Section 1390, Volume 2 Recompiled, Mississippi Code of 1942, providing that the chancellor shall, upon the request of any party to a suit, find facts specially and state separately his conclusions of law thereon, should be construed to require separate findings of ultimate facts but not of evidentiary facts. General Tire & Rubber Company v. Cooper, 176 Miss. 491, 165 So. 420. In discussing this Code Section, Griffith, Mississippi Chancery Practice, 2d ed., Section 594 (c), says: "It will be noted that it is the ultimate facts which are required to be stated, not the evidentiary facts from which the ultimate facts are derived."

■■ ■ The motion for additional findings was directed to evidentiary facts, and we can find no error in the action of the court in denying the motion.

It follows from the views hereinbefore- expressed that the decree of the court below should be and it is affirmed.

Affirmed.

*Roberds, P. J., Hall, Lee* and *Kyle, JJ.,* concur.