WILLIAMS *v.* MAXIE, et al.

No. 42079 December 11, 1961 135 So. 2d 406

*Carl A. Chadwick, William F. Riley,* Natchez, for appellant.

*Chas. F. Patterson,* Natchez, for appellees.

JONES, J.

On December 9, 1957, Mrs. Williams (the former wife of W. W. Maxie, Jr., defendant) filed her bill in the Chancery Court of Adams County against her former husband and his father and mother, W. W. Maxie, Sr., and Mrs. Florence Hutton Maxie. This complaint alleged that Mrs. Williams, who had divorced her former husband and remarried, was the owner of a certain stock of merchandise and store furniture and fixtures described in the bill. She alleged that the defendants were in possession of the property, claiming title thereto from some unknown source, and refused to relinquish possession. The bill also alleged that there was filed and pending in the same court a proceeding by her against her former husband requesting support for their minor children. She charged that her formor husband was depleting said property in an attempt to avoid his obligation to support the children and to delay and defraud his creditors.

She charged that the defendants were in possession of the property and were selling same and that the stock of merchandise had been depleted about fifty percent without replacement. She further charged that her former husband was attempting to dispose of all his property and leave himself insolvent to defraud his creditors and escape support of his children.

She asked for a receiver to be appointed. She charged that the value of said property was in excess of $12,000. The prayer was that she be decreed the owner of the property, awarded possession thereof, plus the value of any property disposed of or sold by the defendants, together with a reasonable rental for the equipment during the time they held possession. She asked for an accounting of the property and for general relief.

Defendants answered, admitting possession of the property and that they claimed title thereto and refused to relinquish possession; denied complainant was the owner, and alleged that the property was sold on or about September 18, 1956, by complainant and her husband, W. W. Maxie, Jr., then man and wife, to the defendants, Mr. and Mrs. Maxie, Sr. They admitted the pendency of the suit by the complainant against her former husband, but denied he was depleting the property and denied there was any attempt to avoid his obligation to support his children, or that he was attempting to hinder, delay or defraud his creditors. They admitted that they were carrying on the business and selling merchandise in the usual course but denied the stock had been depleted without replacement, and denied complainant had any interest in the stock; denied that a receiver should be appointed; denied that the value of the property was in excess of $12,000, or of a value anywhere near that amount.

On February 14, 1958, motion was made to amend the bill of complaint, praying that in the event the court decrees that complainant has an interest less than the

entire, that the court take evidence on whether the property can be partited in kind, and if it cannot be partied that it be sold and the proceeds divided. This amendment was allowed.

A hearing on the motion for appointment of a receiver was had and same denied on March 3, 1958. At this hearing, Mrs. Williams testified that she had swapped the store for a place in Louisiana.

The hearing on the merits was begun on March 6, 1958, at which time the bill of complaint was again amended so as to add an additional prayer that she be awarded a judgment the equivalent in value of her interest in the property. It was agreed that the evidence taken on the motion for the appointment of a receiver should be considered by the chancellor at the hearing on the merits. On March 6, after the taking of some testimony, the hearing was again continued until September 22, 1959, and at the completion of the testimony on that date, the case was taken under advisement by the chancellor for a decision in vacation. On June 21, 1960, he rendered a decree dismissing the bill on the ground that the complainant had not met the burden of proof in establishing her right to the property or its value.

It is argued that the decree is manifestly wrong and against the overwhelming weight of the evidence.

Mr. W. W. Maxie, Sr., as an adverse witness, testified that he took possession of the property in September 1956. He estimated the stock and equipment as worth $1700 or $1800; the stock inventoried $990.93, but there was no appraisal of the equipment. He collected on accounts receivable about $200 or $300 and turned this over to his son, who at that time was married to the complainant. He testified that the store was turned over to him on his assumption of $1900 or $2000 worth of debts to wholesalers. He denied there was any agreement to swap any property in Louisiana. He testified

that he and his wife did agree that complainant and her husband could live in the house on the Louisiana property rent free. Maxie, Jr., was then working at a supermarket in Vidalia. His testimony was that the gross profits from the operation of the store were about $170 per month, from which expenses had to be paid. The store was turned over to Maxie, Sr., and his wife in September 1956, and complainant and her husband moved to the Louisiana property. Complainant and her husband separated about November or December of that year. She returned to Adams County, filed suit and obtained a divorce in January 1957, and soon thereafter remarried. After she had remarried, she and her ex-husband signed a deed to Maxie, Sr., and his wife to the property they owned near the store.

W. W. Maxie, Jr., was also called as an adverse witness. He was asked about the deed to the land. He said there was a $2300 mortgage on it; that his father was supposed to pay that; that there was no agreement to swap any Louisiana property for the store.

Mrs. Williams, the complainant, testified as to the various dealings from the time she and her husband married until their separation. They had bought two or three different stores. The particular store here involved was purchased in December 1955 from a Mrs. Velma Maxie and her husband, and in July 1956, she purchased Mrs. Bass' store just across the street, moved into Mrs. Bass' place of business which she was renting, and there operated the store here involved. She exhibited some checks, one issued in July, and the others in August and September 1956, totaling $2,722.41 that she claimed were for stock purchased and placed in the store. She claimed the business grossed about $4,000 a month after she moved into the Bass place of business; that the Bass store was the only other one in the neighborhood, and by its purchase she eliminated competition. Profit on sales was twenty percent, from which

expenses had to be deducted, leaving her a net profit of $694 per month. Accounts receivable were $2130, of which some few hundred dollars were paid. She gave as her reasons for trading the store that she was tired of working, wanted to build a home, and keep house, and that she agreed with Maxie, Sr., and his wife to swap the store for a Louisiana farm, but no deeds were ever executed though she and her husband took possession of the farm and Maxie, Sr., and his wife took possession of the store. She admitted that there were some bills owing at the time she left the store. She also testified that she received no consideration for the deed signed in March 1957, but this suit does not seek to cancel that deed. However, it was shown in her testimony that some months after the deed was executed, she collected $550 from one Leslie Henson and divided this with her ex-husband, W. W. Maxie, Jr.

Mrs. Velma Maxie testified that some of the accounts receivable were paid to her or Mr. Maxie, Sr.; that when defendants took possession of the store there was $3500 to $4000 of stock; that the complainant tried to re-sell to her, the witness. She said she heard over and over that they were swapping the store and the house for the Louisiana property, and that she, the witness, helped both of them move. On cross-examination, it was disclosed that she and Maxie, Sr., had been involved in a dispute about some deeds about a year before the trial.

The complainant, on being recalled and questioned about reports to the Tax Commission, covering sales taxes, did not deny such reports which showed an average sales of about $1,000 per month.

Allen McAllister, an uncle of complainant, testified that Maxie, Sr., told him he had swapped the farm for the store. M. P. White, complainant's father, also testified that Maxie, Sr., told him they had swapped but there was no deed or anything, and if they wanted to come back to the store they could do so. He also said that

Maxie, Jr., told him that he and his father were going to sell the farm and they would pay the complainant what was coming to her, about $2500.

Maxie, Sr., was recalled and testified that the fixtures he had in his possession were worth between $700 and $800, and that the stock was now worth about $1200.

V. J. Stevens testified that he had issued a policy of insurance for $3000 on furniture, fixtures, equipment and stock of Mrs. Williams but the policy was not renewed. He had also issued a policy on the building, but Mrs. Williams told him not to renew the policy on the store, and the policy on the house was changed to Maxie, Sr., in July 1957, retroactive to March 6, 1957. Complainant rested.

M. D. Cupstid testified he traded at the store but quit because Mrs. Williams did not have what they could get up town and the store was not open all the time; the man she later married hung around the store. A few times she came to the witness' house to collect bills that he did not think were due but she explained she had outstanding checks and wanted to cover them. He quit trading there until he could pay her for it as he wanted to. He testified she let the store run down, but he now trades with Maxie, Sr., who keeps regular hours. He did not hear anything about a swap, but the complainant told him they were moving to the farm. He said while she was operating the store it was sometimes closed; he remembered times she went fishing, coon hunting, took a trip to Florida, went to town to get her hair fixed, as times when the store was closed.

J. A. Huff also traded at the store. He thought the store was about the same now as when she had it. Sometimes he would find the complainant gone and others running the store for her. The store went down while operated by complainant and he quit trading there. Witness' wife was a first cousin of Maxie, Jr.

W. W. Maxie, Jr., testified that at the time of the transfer they owed $1940 in accounts at the store; that the stock inventoried $980, and the fixtures were worth $700 to $800; that his father gave him, the witness, $200 to $300 which was collected on accounts, and that his wife took some of the accounts and collected them; that he and his wife moved to the farm and were to have a place to live without payment of rent; there was no understanding that the store was swapped for the farm; that what caused the immediate transfer was that one night the complainant called his father and said that if he didn't come over and open the store the next morning, the store would not be open. He testified he and his wife had bought all they could without paying something. They separated in November or December of 1956. She got a small amount of money they had in the bank and one lot they owned behind the house, and she sold the lot. She also got half of the $550 which she had collected from Leslie Henson, and half of which she sent to the witness; she got all the furniture. The store owed more than it was worth and she agreed to transfer it to the other defendants, if they would assume and pay debts; that her equity in the house was equalled by the furniture plus her one-half of the money collected as aforesaid. This witness did not know she claimed the property had been swapped until the middle of 1957 when complainant's attorney wrote him. The store was not solvent when his father took it over.

W. W. Maxie, Sr., was recalled and testified the complainant asked him to take up the accounts and he agreed to do so with the understanding that she was to turn the stock and equipment over to him. The accounts amounted to about $2000, and he listed the accounts which he had paid. Some of them were not paid until a year after he took possession of the store because he was unable to pay them until he sold some cows. He had a check for $401.70 which was signed by complainant but

paid by him after he took over the property. He also testified they owed him personally $1345 on the house, which amount he had loaned them. The defendant rested.

The complainant, being recalled, denied owing the defendant this other money of about $1400.

██ ██ It will be seen that the testimony as to the transfer of the store to Maxie, Sr., and his wife was in conflict and we cannot say that the chancellor was manifestly wrong in his decision, nor can we say that the decision was against the overwhelming weight of the evidence.

██ ██ On September 22, 1959, complainant requested permission to again amend the bill by setting up the business transactions which had occurred culminating in the acquisition of the store by the complainant, the allegation that the store had been traded for the farm in Louisiana, the failure to execute deed, and alleging that this was the result of a conspiracy between the defendants so as to in effect make the ex-husband, Maxie, Jr., judgment proof. The chancellor denied the amendment. The complainant had testified at the first hearing for the appointment of a receiver in March 1958 to these matters, including the trading of the Louisiana property. The testimony had been taken again on the merits on March 6, 1958, and again on September 22, 1959. It had been a year and a half since the case had begun and such an amendment had not been tendered. The chancellor had heard the evidence and we do not think his denial of the amendment was harmful, or that it would have changed the result. Further, because of these facts, including the failure to ask the amendment sooner, we cannot say the chancellor abused his discretion. Griffith's Chancery Practice, Sections 391-392; Rolkosky v. Rolkosky, 237 Miss. 89, 113 So. 2d 661.

Affirmed.

*Arrington, Ethridge, McElroy* and *Rodgers, JJ.,* concur.