¶ 1. This appeal arises from a judgment of the Wayne County Chancery Court denying Arletha Nelson's, Mack Arthur Gandy's, and Bobby Joe Gandy's (the Gandys) counterclaims for adverse possession of a certain track of land owned by Armatha Bonner, Johnnie M. Bonner Simmons, Bennie Bonner, Dollie Bonner Simpson, Jimmy L. Bonner, Yvonne Bonner, Levoner Bonner, Yonia Bonner, Leon Bonner, Lonnie Bonner, Levester Bonner, Juanita Bonner Jones, and Drucilla Bonner (the Bonners). The Gandys raise the following issues in this appeal: (1) whether the trial court erred in finding that the evidence was insufficient to establish adverse possession, and (2) whether the trial court erred in entering a judgment without notice to the Appellants after declaring that the record would be left open pending an inspection of the subject property.
¶ 2. We find that the trial court failed to consider certain evidence for a relevant period of time; consequently, we reverse and remand. *Page 702 
 FACTS
¶ 3. In 1996, Arletha Nelson moved a mobile home onto the land in dispute. Subsequently, the Bonners, who are the heirs of Bennie Bonner, filed a complaint in which they alleged that Arletha Nelson was trespassing by moving a mobile home onto a portion of property owned by them.[1] They alleged that the mobile home was on a portion of the following-described land owned by them:
 The East Half of the North Half of the West Half of the Northeast Quarter of the Southwest Quarter of Section 5, Township 9 North, Range 6 West, less one acre in the form of a square in the Northeast corner thereof, containing four acres more or less in Wayne County, Mississippi. Less and except a road right-of-way from home of Dollie M. Bonner Simpson to the public road.
 Also,
 The West Half of the North Half of the West Half of the Northeast Quarter of the Southwest Quarter of Section 5, Township 9 North, Range 6 west, Wayne County, Mississippi and containing five acres more or less.
¶ 4. Nelson answered and filed a counterclaim asserting a claim of adverse possession. She averred that her deceased father, Robert Gandy, acquired the following tract of land in 1941:
 The East Half of the Northwest Quarter and the Southwest Quarter of the Northeast Quarter of Section 5, Township 9 North, Range 6 West, Wayne County, Mississippi.
She further alleged that Robert died intestate in 1998, leaving her and fourteen other persons as his sole heirs at law and that at the time of his death he was in possession of the above-described land which he acquired in 1941, "together with and including the land immediately surrounding the mobile home, less and except certain small tracts conveyed by Robert prior to his death."
¶ 5. On, June 24, 1998, the day of the trial, the trial court granted a motion to intervene filed by Mack Arthur Gandy and Bobby Joe Gandy, Nelson's brothers. Each claimed an undivided one-fifteenth interest in the property. In their intervention motion, they claimed, as did Arletha, that Robert Gandy acquired the land immediately surrounding the mobile home through adverse possession.
¶ 6. After all testimony had been presented, the court stated that it was difficult to identify the land in dispute including a concrete marker and fence that had been identified as being on the disputed property. The trial judge wanted to know what the marker looked like, its location in relation to the cross-fence, and where the fence ran. The court further decided that at a later time, the court, accompanied by the attorneys, could go to the property to inspect it and that the court would "[j]ust leave the record open until we do that."
¶ 7. On December 14, without having inspected the property as promised, the trial court entered a judgment finding that the "evidence presented by the defendant and cross-claimants was insufficient to establish ownership by adverse possession of the property which is the subject of this litigation." The court also ruled that Nelson and others living in the mobile home were trespassing on the property of the Bonners, that they should be ejected, and that the mobile home should be removed from the property.
¶ 8. The Gandys filed two post-trial motions: a motion for relief from judgment, or in the alternative for a new trial, and a motion for finding of facts and conclusions of law. Following a hearing on the motions, the trial court overruled the motion for relief from judgment, or in the alternative for a new trial. However, the trial court granted the motion for findings of fact and conclusions *Page 703 
of law and entered a final judgment.
¶ 9. In its final judgment, the trial court found that a survey performed by Saul Engineering was accurate and that, based on the survey, there was no dispute that the record title to the disputed property was held by the Bonners. The court also found that the Gandys did not meet the requirements of adverse possession because Nelson did not claim the property until 1996. The court further found that a conflict existed in the testimony between the Bonners and the Gandys. However, the court found the Bonners to be more credible. The court also found that the Gandys "failed to specifically identify and describe the property that they have claimed by adverse possession." The only testimony concerning a description of the property was the property "immediately surrounding the mobile home." Additional facts as may be necessary to a proper resolution of the issues will be given during the discussion of the issues.
 ANALYSIS AND DISCUSSION OF ISSUES PRESENTED 1. Adverse Possession
¶ 10. The Gandys argue that they offered clear and convincing evidence of adverse possession. The Gandys aver that one who owns the record title does not determine if property has been adversely possessed. The Gandys further contend that they showed that possession of the Bonner property was actual, open, continuous, exclusive, hostile, peaceful, and notorious through their testimony and the testimony of members of the community. Additionally, they represent that the ownership of the land north of the concrete marker and fence went unchallenged from 1941 to 1993. Nelson, forty-three years old at the time of the trial, testified that her family owned the land all of her life. Further, the Gandys argue that the requirement of ten years to adversely possess has more than been met. The Gandys aver that the court erred when it found that their claim of adverse possession began in 1996 when she moved her mobile home onto the land.
¶ 11. The standard of review on appeal of a chancery court decision is limited in that the chancellor must commit a manifest wrong, act in a way that is clearly erroneous, or apply an erroneous legal standard before this Court can reverse. Savage v. Parrish, 488 So.2d 1342, 1342 (Miss. 1986). Furthermore, the chancellor's findings of fact will not be reversed if there is any substantial credible evidence which supports them. Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss. 1986).
¶ 12. Under Mississippi case law, a litigant claiming adverse possession must prove that his possession or occupancy of the property was: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Blankinship v. Payton,605 So.2d 817, 819 (Miss. 1992).
¶ 13. We look at the chancellor's findings as set forth in the final judgment. This is what the chancellor found:
 The primary issue in this case is whether or not the Defendants have adversely possessed part of the property owned by the Plaintiffs herein.
 Leon Bonner testified that he lived on the property where the Defendant, Arletha Nelson's, mobile home is located from 1981 to 1992. He testified that he *Page 704 
claimed this property as his own, maintained the property and treated it as his property for that period of time. During this period of time from 1981 to 1992, the Defendants nor any other person attempted in any manner to prevent Leon Bonner's use of the property.
 Lonnie Bonner lived on this same property from 1983 to 1995. He used the property as his own and no one, including the Defendants, ever attempted to stop Lonnie Bonner from using this property. Leon and Lonnie further testified that the Defendants did not use this property where the Defendant's mobile home is located during that period of time. Arletha Nelson moved her mobile home on the subject property in 1996. Since 1996, Arletha Nelson has claimed to have an ownership interest in this property, but that time period is not sufficient to establish adverse possession. Witnesses for the Defendant, including Bobby Joe Gandy and Mack Arthur Gandy, testified that they used the property that is in dispute. There is a conflict in the testimony between the Plaintiffs and the witnesses for the Defendant. This Court finds that the testimony of the Plaintiffs is more credible and that the testimony of Leon and Lonnie Bonner establish that the Defendants did dot openly, notoriously, exclusively, as against the world with hostile ownership, claim this property as their own for ten (10) consecutive years. The evidence revealed that Lonnie and Leo Bonner had a house located on the subject property and that the Plaintiffs paid the taxes on the subject property. All of the credible testimony elicited at trial establishes that the Defendants failed to prove any claim for adverse possession. In addition, the Defendants failed to specifically identify and describe the property that they have claimed by adverse possession. The only testimony concerning a description of the property was the property "immediately surrounding the mobile home."
 * * * *
 It is undisputed that the land claimed by Arletha Nelson and the other Defendants is within the call of the title deeds held by the Plaintiffs. Based upon the testimony of Lonnie Bonner and Leon Bonner, the Defendants have failed to adversely claim ownership of the subject property in a manner so as to "fly their flag" over the land to put the record title holders on notice that this land.
¶ 14. The record reflects that the chancellor correctly considered the elements of adverse possession; however, as the above-quoted passage indicates, he only focused on the period of time between 1981 and 1992 when Leon Bonner lived on the property where Nelson's mobile home now sits, and the period between 1983 and 1995 when Lonnie Bonner lived on the same property. Moreover, because the chancellor was only considering the time frame from 1981 to 1996, he opined that Nelson's claim of ownership began in 1996 when she moved her mobile home onto the disputed property. Our review of the record and the evidence indicates that the Gandys presented evidence regarding possession of the disputed land commencing in 1941. It does not appear that the chancellor considered this evidence; therefore, we reverse and remand.
¶ 15. The record reflects that Bobby Joe Gandy was forty-five years old at the time of the trial. This means that he was born in 1952 or 1953. Mack Arthur Gandy was forty-six years old at the time of trial. This indicates that he was born in 1951 or 1952. Both of them testified that their family had possessed the land in question all of their lives which would amount to twenty-five to twenty-six years before the Bonners's predecessor in title acquired record title to the land. Bobby Joe testified that his family claims all the land *Page 705 
north of the concrete marker or the fence. According to the Gandys, Nelson's trailer is located north of the concrete marker, and fence that runs east and west. Bobby Joe further testified that the Saul survey does not show the east-west fence which is located on the property. Mack Arthur testified that the Gandys have always claimed the land where Nelson's trailer is located. He also testified that the Gandys exhibited ownership by farming the land, by hunting on it, and by cutting wood on the property. Mack Arthur further testified that approximately thirteen years preceding the date of the trial, he gave Lonnie Bonner permission to erect a fence on the land for pasture purposes. He also testified that prior to 1993 when Lonnie purchased a neighboring one acre tract of land, no member of the Bonner family had raised any issue over the Gandys's claim to the land in question.
¶ 16. Virgil Pugh was a seventy-nine-year-old witness who lived in the community where the land is located. He testified that with regard to the land in question, John Gandy, father of Robert Gandy, claimed possession and ownership. He testified that the Gandys hunted game, sold timber and paper wood, and farmed the property in question. He also testified that his brother bought wood from John Gandy. He further testified that all of this activity took place where Nelson's trailer was located. He knew of no one else exercising such ownership rights, except he did recall that one of the Bonner boys had a trailer on the land for a while.
¶ 17. Geniveve Nobles was seventy-five years old at the time of trial. John Gandy was her oldest brother. She testified that John Gandy farmed the land, hunted game on it and even built a house on the land at one time. She also testified that John Gandy had a garden in the spot where Nelson's trailer sits. She further testified that she did not recall anyone else claiming possession or ownership of any of the land until 1993. However, she did recall that Leon and Lonnie Bonner lived on the property for a while but she could not recall how long.
¶ 18. Ida Mae Gandy Lukes, the former wife of Robert Gandy, testified that John Gandy acquired 120 acres in 1941. She testified that the property where the mobile home is located, down to the fence and concrete marker, is land that the Gandys have claimed since 1941. Ida Mae testified that they planted vegetables on the land. She also testified that Leon Bonner put a trailer on the land fourteen or fifteen years ago but that he did so by getting permission from her late husband, Robert Gandy. She further testified that she and her husband had been planting on the land for at least fifteen years and no one had ever claimed the land before 1993.
¶ 19. The Bonners forcefully argue that the Gandys's evidence was insufficient to show maturity of title in the Gandys by adverse possession prior to the Bonners's obtaining record title in 1977. Specifically, the Bonners argue that the Gandys's evidence was general in nature and not specific as to the things that they did to indicate to the world the adverse nature of their possession. We agree that the Gandys's evidence was not overwhelming, but the Bonners did not present any evidence in contradiction of that presented by the Gandys. The Gandys's evidence was that they and they alone claimed possession and ownership of the land beginning in1941 and that no one challenged that possession and ownership until 1993. At least two of the Gandys's witnesses testified that the Gandys hunted on the land, farmed it and sold wood off of it. A fair reading of this testimony indicates that all of this was done prior to the Bonners obtaining title in 1977.
¶ 20. As stated, the chancellor focused on the period beginning in 1981. His *Page 706 
decision was based on a finding that Leon and Lonnie Bonner enjoyed an uninterrupted use of the land from 1981 until 1996 when Arletha moved her mobile home onto the land. That this finding was the linchpin of the chancellor's decision is indisputably shown by the following quote from his judgment and findings of fact:
 Based upon the testimony of Lonnie Bonner and Leon Bonner, the Defendants have failed to adversely claim ownership of the subject property in a manner so as to "fly their flag" over the land to put the record title holders on notice that this land was being held under an adverse claim of ownership.
This limited focus, however, ignores the un-refuted evidence presented by the Gandys for the period of time beginning in 1941. The Bonners were not the titleholders in 1941 and the ensuing years.
¶ 21. It is the chancellor's prerogative to assess the credibility of witnesses and to accept and reject the testimony of witnesses in accordance with that assessment. However, where as here, there is an absence of any other testimony or evidence contradicting the evidence that was offered on the issue of adverse possession for the earlier period (1941 to 1977), we are constrained to conclude that the chancellor manifestly erred when he failed to at least consider the evidence for this period. Had he done so he may or many not have found the evidence sufficient. We are mindful of the chancellor's statement that he found the Bonners more credible than the Gandys. However, since the Bonners did not offer any evidence concerning the period of possession from 1941 through 1977, the chancellor could not be commenting upon the Bonners's evidentiary presentation for the earlier period, and it is not denied that the Gandys had owned the adjacent property since 1941.
¶ 22. We address one additional issue. The Gandys failed to present a survey and legal description of the tract of land on which Nelson's mobile home sits, including the surrounding areas which they claim to have adversely possessed. They certainly bear the responsibility of proof in this regard. However, there was evidence offered that the exact physical location of Nelson's mobile home, including the surrounding areas, comprised the disputed land. Since we are reversing and remanding for further proceedings, it is sufficient to say that on remand that if the Gandys are successful in establishing their claim of adverse possession, they will be required to pinpoint the location of the claimed land by the appropriate legal standard.
 2. Entry of Judgment without Notice and without Inspection of the Property
¶ 23. The Gandys contend that the court erred when it indicated that it would leave the record open to inspect the land and then entered judgment without the promised inspection. In light of our disposition of the first issue, this issue is now moot. There is no reason to believe that this issue will surface again on remand. Therefore, we decline to address it.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF WAYNE COUNTY ISREVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE ANDCHANDLER JJ., CONCUR. MYERS, J., DISSENTS WITH SEPARATE WRITTEN OPINIONJOINED BY BRANTLEY, J.
[1] The Bonners's predecessor in title, Bennie Bonner, bought the land in question in 1977.