SOUTHWICK, P.J.,
for the court.
¶ 1. Milton and Claylene Benefield sought to quiet title to small strips of land along the southern boundary of their property. They also sought damages from a person hired by an adjacent landowner to clear these lands. The lower court confirmed title based on the legal descriptions in the Benefields’ deeds but dismissed all claims to the additional strips because of the absence of a usable legal description to the irregular-shaped tracts. We find error in that resolution.
¶ 2. Substantial evidence of adverse possession of additional acreage was introduced. The locations of those strips were shown on a survey that was introduced into evidence. A new survey could have been ordered if the chancellor determined that proof of adverse possession was sufficient and a more detailed survey was desirable. Instead, the chancellor could have confirmed title using a metes and bounds description instead of one using courses and distances from a new survey.
¶ 3. We reverse and remand for further proceedings.
STATEMENT OF FACTS
¶4. Milton and Claylene Benefield own two tracts of land in Union County that are in issue in this suit. They total fifty-eight acres. The disagreement with their neighbors concerns the precise location of the boundary line that divides these tracts from those owned by their neighbors on the south, J. Laque Swords and wife Joan, and Earnest W. Robbins and wife Jamie. A survey of the legal description of a twenty acre tract owned by the Benefields reveals that its southern boundary extends from west to east for aboutl300 feet, then encounters the approximate mid-point of the western boundary of their thirty-eight acre tract. The survey of the legal description of that second tract indicated that its western edge proceeds south from that point approximately 346 feet to its southwest corner. Then the southern boundary of the thirty-eight acres proceeds east from there for approximately 2640 feet. The Swords property is south of the twenty acre tract, while the Robbins property is south of the thirty-eight acre tract.
¶ 5. It is not important to detail the events that led to the present litigation. It is sufficient to say that the customary elements of bulldozers and uprooted trees were involved. The Benefields filed suit in chancery court to quiet title against both of their neighbors. Their complaint set out the legal descriptions of the tracts owned by all the parties. It alleged that the tracts were “easily distinguishable” by physical features, namely that the Bene-fields had planted hardwoods, the Swords lands were “idle,” and the Robbins property was planted in pines. The complaint sought money damages for hardwoods removed by the defendants. Besides the legal descriptions of the tracts, the complaint also alleged certain physical features as establishing the proper boundary lines: (1) between the Benefields and the Rob-binses was a drainage ditch; (2) between the Benefields and the Swordses as to one part of the land, the boundary was 160 inches from a ditch, with a food plot on the tract, and (3) between the latter owners as to another part of the property, an old field road.
¶ 6. The complaint claimed that the Benefields owned all this property based on possession that was legally adverse for over thirty-one years.
¶ 7. A survey revealed that the southern boundaries formed by the legal descriptions in the Benefield deeds did not match the actual boundaries of the food plot, field road, and ditch. The distance between the two sets of possible boundaries was rela *784 tively small, with one exception. The western edge of the Benefields’ thirty-eight tract was said to be formed by a field road that was ninety-one feet west of the boundary formed by a plotting of the legal description. This formed a ninety-one foot by 346 foot tract carved out of land to which the Swordses had record title.
¶8. At trial, significant evidence was introduced concerning the Benefields’ use of the property up to the claimed physical boundaries which intruded into the Swords and Robbins parcels.
¶ 9. After the trial, the chancellor noted that the Benefields were attempting to add lands to those described in their deeds. The court held that since the Benefields’ complaint did not contain a description of the lands claimed to have been adversely possessed, the claim failed. The Bene-fields are here seeking to have that decision reversed and the matter remanded to the chancellor. There is no allegation of error in the chancellor’s dismissal of the claim for damages against the individual who, by using a bulldozer, removed trees that the Benefields claim were owned by them. We therefore do not discuss the damage question.
DISCUSSION
¶ 10. The central issue in this appeal is one of pleadings. The Benefields specifically described their two tracts, using the legal descriptions in their deeds. They also indicated in other paragraphs certain physical markers of the boundaries such as roads and a “food plot.” The complaint alleges that the “actual boundary lines” dividing their property from that of their neighbors are these physical features. Then in paragraph 23 of the complaint, the Benefields allege that they have been in adverse possession “of all the land described in paragraphs 3 and 5” for the requisite number of years. Those two paragraphs contain the legal descriptions of the two tracts and do not refer to the tracts as potentially enlarged up to the physical features that the complaint also describes.
¶ 11. The chancellor bound the plaintiffs to paragraph 23 for the land covered by adverse possession. Since that particular paragraph only expressly incorporated the legal descriptions, the chancellor found no request for relief of title to any additional lands:
COURT: Now, then, that is all that this Court is being asked to rule on is what is described in this complaint. And that’s in paragraph three and paragraph five, and you have proven that.
[[Image here]]
COURT: All right. To claim by adverse possession you’ve got to — you’ve got to detail it in specificity as to what area you are claiming, so that the Court can rule as to who is ownership of that land.
BENEFIELD COUNSEL: Yes, sir. And we have by — we are using their surveys, we are willing to use the points that their survey—
COURT: — Where is me a description?
COUNSEL: The description is not going to be here until the Court determines where to mark the point.
COURT: No, sir, that’s not the way— that’s not the way you do these type cases.
¶ 12. The survey offered by the defendants showed the location of the alleged physical boundaries of field roads and food plots. There was no evidence from which a comprehensive courses and distances description of all three tracts could be made. That is to say, the survey- or did not mark specific distances, directions and angles for the food plot from any point of beginning, nor did he do so *785 for the two field roads that were shown. The absence of such information is what troubled the chancellor and appeared to be the principal reason causing him to deny broader relief.
¶ 13. We examine this alleged defect from two perspectives. One is the absence of an explicit request to confirm title through adverse possession not just to the lands covered by the legal descriptions, but lands that might extend some slight distance from those boundaries to other physical boundaries. This is the issue created by the phrasing of paragraph 23 in the complaint.
¶ 14. There is no basis to block consideration of the issue because of the language in the complaint. Even if the Bene-fields had not alleged adverse possession at all, the receipt of the kind of evidence offered here and accepted without objection on the question of possession would constitute a trial by consent. Stewart v. Graber, 754 So.2d 1281, 1285 (Miss.Ct.App.1999), applying M.R.C.P. 15(b) (if trial by consent, no amendment needed). The fact that paragraph 23 asserted title by possession but perhaps could have described the land better does not alter the effect of consent. Had a defendant objected to any evidence of possession beyond that which affected the lands whose legal descriptions were incorporated by paragraph 23, then the issue would have been joined at trial. Likely the Benefields would have been allowed to amend their complaint at that time to remove any ambiguity. Some chancellors might not have found any weakness in the pleadings.
¶ 15. We find that the legal issue of whether the Benefields had possessed up to the boundaries shown by their evidence, even if that evidence did not conform to paragraph 23, was fully in the case at least because of consent. It therefore needed to be ruled upon.
¶ 16. The second perspective from which we examine this issue concerns the absence of a courses and distances description of the boundaries prepared by a surveyor. There are precedents in which after sufficient evidence was introduced of possession to various physical boundaries which had not yet been surveyed, a chancellor may order a survey at that time. See Nelson v. Bonner, 829 So.2d 700, 705 (Miss.Ct.App.2002); Cheatham v. Stokes, 760 So.2d 795, 798 (Miss.Ct.App.2000). A survey was in the parties’ best interest to avoid future controversies, but it was not required if there were other ways that the land could be definitively described by witnesses and the court.
¶ 17. An acceptable manner in which to describe boundaries of tracts of land is by metes and bounds. Jack H. Ewing, Mississippi Land Descriptions, 18 Miss. L.J. 381, 385-87 (1947) (descriptions by reference to natural or artificial boundaries). If the chancellor found that the Benefields had proved the full extent of their claimed possession, the land could have been described as all of the relevant governmental quarter-quarter sections north of the field road, or east of the other field road, or north of the food plot. That could have instead just have been a preliminary description, to be followed by a survey if the parties desired or if the chancellor ordered.
¶ 18. There was substantial evidence of possession, but the weight and credibility of evidence is for the fact-finder. We remand to the chancellor in order that findings of fact and conclusions of law may be entered, without rejecting the evidence simply because of the lack of a courses and distances description. The determination may be based on the record made to date, and on such other hearings and evidentia- *786 ry presentations as the chancellor in his discretion finds to be appropriate.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF UNION COUNTY IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS ARE ASSESSED TO THE APPEL-LEES.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.