# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-CA-01168 COA

**JOHN KENNETH MYERS AND LYNDA DEDERICH**                                    **APPELLANTS**

**v.**

**BETTY GAYLE MYERS**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/96 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS T. BUCHANAN |
| ATTORNEY FOR APPELLEE: | LARRY O. NORRIS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | DIVORCE GRANTED TO APPELLEE ON GROUND OF ADULTERY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 8/4/98 |
| MOTION FOR REHEARING FILED: | 8/21/98 |
| CERTIORARI FILED: | 11/9/98 |
| MANDATE ISSUED: | 2/10/99 |

BEFORE McMILLIN, P.J., DIAZ, AND KING, JJ.

KING, J., FOR THE COURT:

¶1. Betty Gale Myers was granted a divorce from her husband, John Kenneth Myers, on the ground of adultery. In the division of marital assets, the Jones County Chancery Court set aside certain real and personal property conveyances from Mr. Myers to his sister as fraudulent, placed a $98,000 certificate of deposit purchased with proceeds of a personal injury settlement into a constructive trust for Mrs. Myers, and divided remaining marital property equally between the parties. Aggrieved, Mr. Myers assigns six points of error on appeal:

> **(1) The Court erred in failing to make specific findings of fact and conclusions of law as requested by the Husband.**

> **(2) The Court erred in granting the Wife's divorce on the grounds of adultery.**

**(3) The Court erred in identifying the marital assets of the parties.**

**(4) The Court erred in finding a constructive trust as to a certificate of deposit in the name of the Husband.**

**(5) The Court erred in finding that certain real and personal property conveyances between the Husband and his sister were fraudulent conveyances.**

**(6) The Court erred in granting attorney's fees to the Wife.**

¶2. Finding error only in the chancellor's determination that the certificate of deposit belonged solely to Mrs. Myers and his subsequent imposing of a constructive trust upon the certificate of deposit, we reverse in part and remand. We affirm the remaining portions of the chancery courtjudgment.

## FACTS

¶3. John and Betty Gale Myers were married in July of 1971 and divorced in July of 1996. The couple had three children. At the time of the divorce, the children were adults. Throughout the marriage, Mr. Myers operated a grocery store, raised cattle, and sold used cars and farm equipment. Mrs. Myers assisted Mr. Myers with some of the businesses and later worked as cashier in the University of Southern Mississippi's business office. After being injured in a car accident in 1985, she stayed at home to care for the family.

¶4. Mrs. Myers initially filed for divorce in February of 1994, alleging the grounds of habitual cruel and inhuman treatment. The Jones County Chancery Court ruled that Mrs. Myers failed to sufficiently establish this ground of divorce. In January of 1995, Mrs. Myers again filed for divorce, alleging constructive desertion, adultery, and cruel and inhuman treatment. In March of 1995, she amended the second complaint, adding the ground of natural impotency. Mr. Myers filed a Motion to Dismiss the claims of natural impotency and constructive desertion which was granted. The Court consolidated the second complaint for divorce with Mrs. Myers' suit to set aside certain conveyances between Mr. Myers and his sister and an interpleader filed by the First Magnolia Bank for Savings regarding a certificate of deposit in Mr. Myers' name. After a trial in this cause, the chancellor found adulterous conduct by Mr. Myers and granted the divorce.

¶5. The chancellor found that Mr. Myers had fraudulently conveyed real and personal property to his sister, Lynda Dederich, and set aside these conveyances. The Court determined that these fraudulently conveyed items were marital property, subject to division by the court.

¶6. The chancellor found that a certificate of deposit, held in Mr. Myers' name, was part of the proceeds of a personal injury award to Mrs. Myers. Because the certificate of deposit was held in Mr. Myers' name for the sole purpose of FDIC insurance, the court held it to be the separate property of Mrs. Myers, and imposed a constructive trust upon it.

¶7. William Robinson, Mr. Myers' brother in law, received $18,000 from Mr. Myers to repurchase approximately twenty-two acres of Mr. Robinson's foreclosed farmland. Mr. Robinson testified that he repurchased the land for Mr. Myers' benefit. He spoke to Mr. Myers on several occasions concerning the transfer of the land and the removal of Mr. Robinson's name from the deed. However, Mr. Myers hesitated about the transfer. The Court ultimately determined that the land was purchased

with proceeds of the certificate of deposit and that Mr. Myers' transfer of these funds was "a conscious effort to delude [Mrs. Myers] and this Court about his financial transactions". Mrs. Myers was, therefore, granted an equitable lien on the real property held in Mr. Robinson's name to the extent of $18,000.

¶8. Marital property was divided equally between the parties as follows:

(1) The marital home together with 2.5 acres appurtenant thereto,

(2) One acre of land and mobile home,

(3) The 6 acre and 3.75 acre parcels of land obtained in 1973,

(4) The .87 acre lot and shop,

(5) The household furnishings, farm equipment and all other items of personal property acquired during the marriage.

The chancellor ordered the parties to agree upon a division or sale of the remaining real property.

¶9. Mr. Myers requested the court to make specific findings of fact and conclusions of law regarding the res judicata effect of evidence existing prior to the first divorce proceeding, the burden of proof, elements of a fraudulent conveyance and a constructive trust. The court ruled that it had sufficiently responded to this request in its "Opinion" dated July 15, 1996. Mr. Myers' Motion for New Trial, Motion for Additional Findings of Fact and Conclusions of Law and Motion to Amend Judgment were denied. He now appeals the denial of these motions and the granting of the divorce.

## ISSUES

## I. THE COURT ERRED IN FAILING TO MAKE SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW AS REQUESTED BY THE HUSBAND.

¶10. Mr. Myers contends that the chancery court should have provided specific findings of fact and conclusions of law. He argues that the court failed to give legal standards regarding (1) the res judicata affect of the first trial and (2) the burden of proof and elements of a constructive trust and fraudulent conveyance. We disagree.

¶11. Mississippi Rule of Civil Procedure 52 addresses the question of findings of fact and conclusions of law by the judge sitting without a jury. A court has technically complied with the mandates of Rule 52 where it makes general findings of fact and conclusions of law although requested by a party to make specific findings. *Century 21 Deep South Prop. v. Corson*, 612 So.2d 359, 367 (Miss.1992).

¶12. The chancellor made the following findings of fact leading to his conclusions of law:

*Res Judicata Effect (Court's statements during the Hearing on the Motion for a New Trial)*

It is clear from the Opinion that I think its clear from the record if you'll look at the testimony, that all of these [adulterous] matters occurred prior to the separation and prior to the first divorce trial.

*Constructive Trust (Court's Opinion dated July 15, 1996)*

Betty Gayle was involved in an automobile accident while she and John lived together. She sustained serious personal injuries as a result of that accident . . . [Her lawyer] negotiated a settlement of $450,000 to settle the claim. The settlement included any claim which John Meyers may have had for loss of consortium. No specific amounts were designated for Betty Gayle's personal injuries and John's loss of consortium [John's loss of consortium was worth no more than $25,000]. . . During [a] meeting with the [Chief Officer of Eagle Federal Bank for Savings] John explained to him that the money belonged to Betty Gayle and came from the settlement of her claim for her injuries . . . Based upon [his] advice, John and Betty Gayle obtained a certificate of deposit in their separate names solely for the purpose of obtaining FDIC insurance on the full amount of Betty Gayle's settlement. . . This Court is of the opinion that the certificate of deposit now held at First Magnolia Federal Bank for Savings in the name of John Myers is the property of Betty Gale Myers and is now held in a constructive trust by John Myers. It is the further opinion of the Court that the funds there held on deposit in the name of John Myers are not a marital asset of John and Betty Gayle Myers but are the separate property of Betty Gayle Myers to which she is entitled to full ownership.

*Fraudulent Conveyance (Court's Opinion dated July 15, 1996)*

Lynda Dederich (Mr. Myers' sister) admits that she paid no consideration whatsoever to John for the deed to the real property and asserts that $5,000 cash was paid for the personal property conveyed to her. Yet, the evidence is clear that John continued to enjoy the use, benefit and income from all of the property conveyed to his sister as though it were his own. Notwithstanding Lynda's testimony, the Court is convinced that Lynda paid no consideration whatsoever to John for the conveyances and that she and John conspired together to make such conveyances solely for the purpose of attempting to defeat the rights of Betty Gale Myers to such property as a marital asset.

Their acts in this regard are not only a fraudulent conveyance as to Betty Gayle Myers, but their feeble effort to justify their actions before this Court is, in this Court's opinion, an effort to perpetrate fraud on this Court.

¶13. Considering these findings of fact, we do not find that the absence of precise recitations or citations of applicable law was error. Unless the chancellor has abused his discretion, we will not disturb his findings when supported by substantial evidence. ***Id****.*

¶14. The chancellor's findings as applied to the law of res judicata, constructive trust and fraudulent transfers will be discussed under Mr. Myers' second, third, fourth and fifth assignments of error, respectively. Ultimately, we find that the chancellor's findings regarding the res judicata effect of the first trial and the fraudulent conveyance are supported by substantial evidence and correctly apply the law. However, the chancellor's finding regarding the constructive trust was in error, and therefore we reverse and remand.

**II. THE COURT ERRED IN GRANTING THE WIFE'S DIVORCE ON THE GROUNDS OF ADULTERY.**

¶15. Mr. Myers argues that (1) the Chancery Court improperly relied upon evidence which occurred prior to the first trial of divorce, thereby violating the doctrine of res judicata and (2) Mrs. Myers connived and condoned his adulterous behavior.

¶16. After the first divorce trial, the Chancellor determined that Mrs. Myers did not establish grounds for cruel and inhuman behavior. Adultery was not a ground for divorce during the first proceeding. Since Mrs. Myers alleged adultery in the second divorce trial, the chancellor determined that evidence concerning adulterous behavior prior to, during, and after the first divorce complaint was relevant to establish adultery. Clearly, the chancellor made the proper application of the doctrine res judicata, when he refused to preclude Mrs. Myers from introducing evidence of adulterous inclination exhibited prior to the first divorce action.

¶17. Under the doctrine of res judicata, a party having multiple grounds for relief against a party which arise out of the same controversy, should, in the interest of judicial economy and finality, present each of those claims in the same action. *Little v. V & G Welding Supply, Inc.* **704 So.2d 1336, 1337-38 (Miss.1997).** The failure to do so may, through the application of res judicata, preclude the litigation of those claims, which could and should have been included in the earlier action. *Estate of Anderson v. Deposit Guaranty National Bank*, **674 So.2d 1254, 1256 (Miss.1996)**. However, a claim which has not matured is not subject to the doctrine of res judicata. *Little* **at 1337-38.**

¶18. "[O]ne seeking a divorce on the grounds of adulterous activity must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination." *Holden v. Holden*, **680 So.2d 795, 798 (Miss.1996)**. When the first divorce action was heard and denied, Mrs. Myers apparently was aware of Mr. Myers' adulterous inclination, but lacked knowledge of any opportunity to satisfy that inclination. Because Mrs. Myers was aware of only one of the two elements required to establish adulterous conduct, her claim had not matured, and could not have been included in the first divorce action.

¶19. Subsequent to the denial of the first divorce complaint, Mrs. Myers became aware not only of Mr. Myers' adulterous inclination, but also his opportunity to satisfy that inclination. The record has sufficient evidence from which the chancellor could, and did, find that Mr. Myers had (1) an adulterous inclination and (2) the opportunity to satisfy that inclination.

¶20. Connivance and condonation by Mrs. Myers would have precluded the granting of a divorce based on adultery. Evidence to support connivance and condonation on the part of Mrs. Myers was not evident in the record. The chancellor did not err in granting the divorce on the ground of adultery.

## III. THE COURT ERRED IN IDENTIFYING THE MARITAL ASSETS OF THE PARTIES.

¶21. Mr. Myers contends that the court erred by (1) placing the certificate of deposit in a constructive trust for Mrs. Myers and (2) awarding one-half of the cattle to Mrs. Myers without the indebtedness thereon. Because Mr. Meyers has failed to offer meaningful argument or authority on the division of the cattle and its indebtedness, we hold this matter to be procedurally barred, and accordingly decline to address it. **Mississippi Rule of Appellate Procedure 28(1)(6);** *McClain v. State*, **625 So.2d 774, 780 (Miss.1993).** We, therefore, address only the trial court's alleged error in

placing the certificate of deposit into a constructive trust.

¶22. In 1985, Mrs. Myers was seriously injured in an automobile accident. She purchased two certificates of deposit with the settlement funds. One certificate of deposit was listed in her name and the other in Mr. Myers' name. Mr. Myers contends that this certificate of deposit is marital property. It appears that the primary purpose in listing one of the certificates of deposit in Mr. Myers' name was to secure FDIC insurance. However, the record does not reveal what portions of the settlement and resulting certificate of deposit were attributable to the respective claims of Mr. and Mrs. Myers. The claim of Mr. Myers would have been one for loss of consortium, while all other claims would properly belong to Mrs. Myers. *Regan v. Regan*, **507 So.2d 54, 56-7 (Miss.1987).**

¶23. In *Regan*, the husband was injured on an oil rig. Having settled this work related injury claim, (1) $225,000 was initially issued to Mr. and Mrs. Regan and their attorney, jointly and severally, and (2) subsequently a $107,000 certificate of deposit was purchased and made payable to Mr. and Mrs. Regan as joint tenants. The chancery court in that case, divided the certificate of deposit equally between the two parties. *Regan* **at 56**. Mr. Regan appealed this determination contending that the certificate of deposit was not marital property, and therefore, he should have received the entire amount. *Id.* The supreme court held that "to the extent that the funds reflected by the certificate of deposit were in fact derived from [Mr. Regan's] maritime personal injury claim, they are his property and may not be ordered shared with his wife as a part of a property division incident to divorce proceedings." *Id.* However, "the property division should have reflected, pro rata, the extent to which the settlement proceeds were fairly attributable to the respective claims of the two." *Regan* **at 56-67.** The supreme court remanded this case to the chancery court to determine the amount of the $225,000 settlement attributable to the claims of Mr. Regan and Mrs. Regan and thereafter, divide the certificate of deposit accordingly. *Regan* **at 57.**

¶24. This Court interprets those cases relating to equitable distribution that have come after the Regan decision as having modified the holding in Regan to the extent that the portion of the injured spouse's recovery attributable to lost wages and medical bills accruing during the marriage may be treated as marital property subject to equitable division; whereas, that part attributable to pain and suffering of the injured spouse and the uninjured spouse's loss of consortium claim remain the separate property of the respective parties and not, therefore, subject to further consideration for equitable division.

¶25. In the instant case, the record does not clearly reflect which portions of the certificate of deposit derived from the respective claims of Mr. or Mrs. Myers. Based upon the precedents of this court, we hold that the chancellor erred in determining that the $98,000 certificate of deposit belonged solely to Mrs. Myers. We reverse and remand to the chancery court to determine what portions of the settlement and resulting certificate of deposit were attributable to the respective claims of Mr. and Mrs. Myers.

¶26. Having determined what portions of the settlement and resulting certificate of deposit are assignable to the respective claims, the chancellor should determine to what extent the individual components of each partner's award would have been jointly shared by the partners. By way of example, it is presumed that wages benefit the entire family and medical expenses are the responsibility of the family. Therefore, any payment for wages lost during the marriage would be

subject to consideration as marital property. This would not hold true for lost wages projected to occur beyond the duration of the marriage.

¶27. Likewise, reimbursement for medical expenses accruing during the marriage would be subject to consideration as marital property. However, payments for anticipated medical expenses and medical expenses accruing after the duration of the marriage would not be subject to consideration as marital property.

## IV. THE COURT ERRED IN FINDING A CONSTRUCTIVE TRUST AS TO A CERTIFICATE OF DEPOSIT IN THE NAME OF THE HUSBAND.

¶28. "A constructive trust is one that arises by operation of law against one who . . . holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy." 54 Am.Jur., Trusts, Sec. 218. Having found that the chancellor's determination that the certificate of deposit belonged solely to Mrs. Myers was in error, we, too, find that the chancellor committed error in imposing a constructive trust upon the certificate of deposit. While the certificate of deposit was held in Mr. Myers' name, the exact portions of the certificate of deposit attributable to Mr. or Mrs. Myers are not clearly identified in the record. A constructive trust may have been proper had their respective portions been determined.

## V. THE COURT ERRED IN FINDING THAT CERTAIN CONVEYANCES BETWEEN THE HUSBAND AND HIS SISTER WERE FRAUDULENT CONVEYANCES.

¶29. "When examining a conveyance to determine if it is fraudulent, a court searches for certain "badges of fraud," or suspicious circumstances, which usually accompany a fraudulent conveyance. *Southeast Bank of Broward, Florida, N.A. v. I.P. Saruillo Enterprises, Inc.* **555 So.2d 704, 707 (Miss.1989)**. In the instant case, there were numerous "badges of fraud":

(1) Relationship of the grantor to the grantee--Mr. Myers transferred real property and equipment all of which were marital property, to his sister, Lynda Dederich. "Such a relationship, while not always considered to be a badge of fraud, is nonetheless always deserving of close scrutiny." *Southeast Bank of Broward,* **at 708.**

(2) Inadequacy of consideration-- Ms. Dederich claimed that she paid Mr. Myers $5,000 for the transferred property. However, the chancellor determined, after hearing her testimony, that Ms. Dederich had not paid any consideration for any of the conveyances. *Southeast Bank of Broward,* **at 707.**

(3) Continuation of use of property after its transfer--Mr. Myers continued to use the equipment and enjoyed the use of the real property as if the transfers had not occurred.

¶30. These facts support the chancellor's finding that Mr. Myers had engaged in fraudulent behavior. In deference to the chancellor's role as finder of fact, we do not find that he abused his discretion in setting aside the real and personal property transfers as fraudulent.

## VI. THE COURT ERRED IN GRANTING ATTORNEY'S FEES TO THE WIFE.

¶31. Mr. Myers contends that Mrs. Meyers should not receive attorney's fees because of her failure to

demonstrate an inability to pay. We disagree. Though the general rule is that the party seeking attorneys' fees must demonstrate an inability to pay, a trial court may award attorneys' fees, in divorce actions, where fraudulent conveyances are involved. ***Pittman v. Pittman***, **652 So.2d 1105, 1111 (Miss.1995).** Since the chancellor in the instant case set aside the conveyances to Ms. Dederich as fraudulent, we find that the chancellor did not abuse his discretion in awarding attorney's fees in the amount of $7,500 to Mrs. Myers. He merely reimbursed her the extra legal costs incurred as a result of Mr. Myers' actions. ***Pittman,*** **at 1112.**

**¶32. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS REVERSED AND REMANDED IN PART, AND AFFIRMED IN PART. THE JUDGMENT REGARDING THE CERTIFICATE OF DEPOSIT IS REVERSED AND REMANDED TO DETERMINE WHAT AMOUNT OF THE CERTIFICATE OF DEPOSIT WAS: (1) COMPENSATION TO THE INJURED SPOUSE FOR PAIN AND SUFFERING, (2) COMPENSATION TO THE INJURED SPOUSE FOR LOST WAGES AND MEDICAL EXPENSES, AND (3) COMPENSATION TO THE UNINJURED SPOUSE FOR LOSS OF CONSORTIUM. REMAINING PORTIONS OF THE CHANCERY COURT JUDGMENT ARE AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**