CHANDLER, J.,
for the court.
STATEMENT OF THE CASE
¶ 1. T.K., through her guardian and next friend, brought suit against the Simpson County School District (District), under the Mississippi Tort Claims Act, 11-46-1 to -23 (Rev.2002), alleging that she had been sexually assaulted by two male classmates, claiming the District was liable for damages because of its failure to properly supervise students on the campus of Ma-gee Middle School. Following a bench trial, the Circuit Court of Simpson County entered a judgment for the defendants denying all recovery sought.
¶ 2. T.K. appeals asserting that the circuit court erred by: (1) requiring her to prove she had been sexually assaulted; (2) applying the incorrect legal standard as to duty of ordinary care, and ignored the overwhelming weight of the evidence in finding the duty was not breached; (3) failing to find that there was a duty to prevent all foreseeable sexual contact; (4) incorrectly applying proximate cause; (5) allowing expert testimony of a psychome-trist who stated T.K. did not display characteristics of a rape victim during an interview; (6) ignoring the overwhelming weight of the evidence in finding the defendants adequately investigated the sexual assault allegation; (7) failing to enter proper sanctions for discovery violations; (8) permitting testimony that contradicted answers to requests for admission; (9) re *315 fusing to admit results of a polygraph examination; and (10) denying a motion for findings of fact and conclusions of law.
¶ 3. Finding that the circuit court did not err, we affirm.
STATEMENT OF FACTS
¶ 4. On September 22, 1997, school dismissed at its regular time of 3:15 p.m. Most students left the campus by 3:25 on school buses. However, due to a shortage of bus drivers, students on at least one bus route had to wait for a bus to complete a route, and return to take them home. Consequently, some students were left waiting at the school until approximately 4:00 p.m. T.K. was among these students.
¶ 5. T.K. testified that, at some point in time while she waited, she entered the school to use the restroom. She used the restroom and was walking down a hallway to return outside, when two male students forced her into the boy’s restroom. One student removed her undergarments and attempted to rape her, but was unsuccessful. The other male then raped her. The males left the restroom. T.K. returned to the girl’s restroom and washed her face. She then went outside where she looked for a teacher to report the attack, but could not find one. Another classmate testified that T.K. was crying and upset. At the time, T.K. was eleven years old, and the male students were twelve and thirteen years old.
¶ 6. T.K. did not initially report the attack to her grandmother, but that same evening, a classmate telephoned and told her grandmother that the boys had “went with her.” Her grandmother questioned T.K., but she would not tell her grandmother what happened. The next day, September 23, 1997, T.K. told both her grandmother and her uncle, a Magee police officer, that she had been sexually assaulted. On September 24, 1997, they sought medical attention, but this examination was inconclusive except to show that at some unascertainable time prior to the examination, T.K. had experienced some sexual contact. T.K. and her family then reported the allegation to Ernest Jaynes, the school principal.
1. WHETHER THE TRIAL COURT ERRED IN REQUIRING T.K. TO PROVE THAT SHE WAS SEXUALLY ASSAULTED.
¶ 7. This case involves the issues of cause in fact and proximate cause. To recover in tort, a plaintiff must show both causation in fact as well as proximate cause. Richardson v. Methodist Hosp. of Hattiesburg, Inc., 807 So.2d 1244(¶ 16) (Miss.2002).
¶ 8. The circuit court found no causation in fact because T.K. failed to show that she had been sexually assaulted. There was no physical evidence that T.K. was raped, nor does it appear any criminal charges were brought. Rather, T.K. asserts that she declined to pursue criminal remedies because the District sought to avoid publicity. T.K. testified to the assault, but on at least one occasion prior to trial, she recanted her charges. Her classmate confirmed that T.K. appeared upset at the time the assault was alleged, and her grandmother and uncle testified to what she had told them. T.K. also called two expert witnesses who testified that T.K.’s failure in reporting the charges immediately, and offering different versions of events, was consistent with victims of sexual assault. The District, in its turn, called the two male students, whom T.K. alleged assaulted her, and they denied any sexual activity. The District also called its own expert witness, who stated T.K’s demeanor in an earlier interview was not consistent with victims of sexual assault. The school principal, Ernest Jaynes, testi *316 fied that after interviewing the students, he believed that “something” happened in the bathroom. While he did not believe an actual rape occurred, neither did he believe T.K. was making false accusations, so he was unable to determine exactly what did occur in the boy’s bathroom.
¶ 9. Based upon this evidence, the circuit court found as fact that T.K. failed to prove she had been assaulted. Factual findings will not be reversed if supported by credible evidence. Nelson v. Bonner, 829 So.2d 700(1111) (Miss.Ct.App.2002). The trial court’s decision is supported by T.K.’s recanting her allegations on at least one occasion and the absence of any physical evidence of an assault. The alleged attackers denied the attack, and an expert witness testified that T.K’s behavior was inconsistent with that of a victim. Based upon this record, we cannot say the circuit court manifestly erred. There is no merit to this assignment of error.
2. WHETHER THE CIRCUIT COURT APPLIED THE CORRECT LEGAL STANDARD AS TO THE DISTRICT’S DUTY TO SUPERVISE STUDENTS, AND WHETHER THE CIRCUIT COURT IGNORED THE OVERWHELMING WEIGHT OF EVIDENCE IN FINDING ADEQUATE SUPERVISION.
¶ 10. We apply de novo review to questions of law. The circuit court’s opinion stated that the duty owed by the school was “ordinary care.” This is the correct standard as found by our supreme court in L.W. v. McComb Sep. Municipal Sch. Dist, 754 So.2d 1136(1124) (Miss.1999). T.K. asserts that, because the circuit court noted that the lack of “bad faith, maliciousness or wanton disregard” allowed it to find that this standard was met, it applied the incorrect legal standard. As discussed below, this quotation is taken out of context. Rather than being a statement about the legal standard applied, the statement went to the weight of the evidence. The circuit court’s opinion shows it was well aware of the legal standard regarding duty of care and evaluated the proof according to that standard. There is no merit to the assertion that the circuit court applied the incorrect legal standard as to duty of care.
¶ 11. As a finding of fact, the circuit court found that the school district met the standard of care “only by the slightest of margins.” Findings of fact are subject to manifest error review. White v. Thompson, 822 So.2d 1125(¶ 10) (Miss.Ct.App.2002). Ernest Jaynes, the principal, testified that he was to monitor the loading of buses, and he had also directed Mrs. Onnie Lee and two unidentified male teachers to assist him. Jaynes testified that a teachers’ meeting was scheduled at 3:15, so he was not present for the loading of busses. He was unable to testify as to whether the other three adults were at the bus line because he had no direct knowledge of their whereabouts at the time in question. T.K., one of her female classmates, and one of the males accused of assaulting her testified that they had not seen any supervising adults at the bus line after the assault was alleged to have occurred. None of the three teachers testified.
¶ 12. T.K. argues that the evidence fails to support a finding that supervision was present. But this argument is insufficient to meet the legal standard. The applicable case law establishes that a plaintiff, even a child, has a burden of showing that school district employees do not perform the duties to which they are assigned. Summers v. St. Andrew’s Episcopal Sch., 759 So.2d 1203(¶ 39) (Miss.2000). T.K. did not contend that there was an insufficient number to supervise *317 the bus line. Rather, the argument is that as a matter of law, students’ testimony that they did not see a teacher creates a legal presumption, which the District must then rebut. T.K’s argument is literally that because the District did not call the three teachers, who were in its “control,” there could be no factual finding except that the teachers were not present.
¶ 13. Jaynes testified that, as the principal, he had done all he was required to do: he assigned three adults to supervise the loading of busses. The circuit court found as fact that the testimony of three students that they saw no teachers present was insufficient to establish that the adults were, in fact, not at their assigned locations.
¶ 14. The circuit court heard the testimony and observed the demeanor of the witnesses. T.K. had the burden of proof of showing the teachers were, in fact, not at their assigned locations. In ruling on this issue, the circuit court held that there was no “bad faith, maliciousness or wanton disregard” detected when viewing the District’s witnesses. The circuit court found this to be a close factual issue, but ruled in the District’s favor. We decline to second guess the circuit court from our distance of a cold record.
3. WHETHER THE CIRCUIT COURT ERRED IN NOT HOLDING THAT THE DISTRICT HAD A DUTY TO PREVENT ALL FORESEEABLE SEXUAL ACTIVITY.
¶ 15. T.K. asserts that, because she was eleven years old and unable to consent to sex, the circuit court erred as a matter of law in not finding that the District had the legal duty to prevent all foreseeable sexual activities among students, consensual or otherwise. Findings of law are subject to de novo review. Rawls v. Blakeney, 831 So.2d 1205(¶7) (Miss.Ct.App.2002). T.K. argues that the District admitted that some sexual activity occurred, because it took disciplinary action against T.K., as well as her accused rapists. At a school board meeting, the board required all three students, as well as Jaynes, to testify as to the facts concerning the allegation of rape. The accused rapists denied any sexual contact. T.K. testified one of the males tried unsuccessfully to rape her, while the other completed a rape. Jaynes testified at trial, that he told the school board that after interviewing the students, he believed that “something” happened in the bathroom. While he did not believe an actual rape occurred, neither did he believe T.K. was making false accusations, so he was unable to determine exactly what did occur in the boy’s bathroom. The school board decided that all three students should finish the year at the alternative school. However, there was no transcript of the hearing nor a record showing what the school board decided as to the facts. Evidently, the school board accepted Jaynes’ statement that he was unable to ascertain exactly what the facts truly were, but something of a sexual nature occurred.
¶ 16. T.K’s argument is that the District had the legal duty to prevent all foreseeable sexual activities among students. No Mississippi statute or case establishes that a school has a duty to prevent any and all sexual contact. Rather, the case law anticipates that students will at times fail to respect their peers’ personal boundaries and/or make bad choices. See, e.g., Summers, 759 So.2d at (¶ 43). Liability only attaches when a school fails to utilize ordinary care to prevent foreseeable injury. Id. at (¶ 44).
¶ 17. While the circuit court did not make a specific finding, its order fairly reads, and the testimony at trial established, that the District had reason to be *318 lieve that some middle school students might forseeably engage in sexual acts if not supervised. However, the law does not impose upon a district a duty to prevent any and all sexual activity. A school must use ordinary care. L.W., 754 So.2d at (¶24). Because the District exercised, ordinary care, there was no showing of breach of duty. This assignment of error is without merit.
4. WHETHER THE CIRCUIT COURT ERRED IN ANALYZING PROXIMATE CAUSE.
¶ 18. T.K. asserts that the circuit court erred in its application of proximate cause. We review the application of law de novo. Rawls, 831 So.2d 1205 at (¶ 7). Proximate cause requires that the injury is foreseeable by the defendant. Marshall Durbin v. Tew, 362 So.2d 601, 604 (Miss.1978). The circuit court’s opinion does not explicitly state its finding on proximate cause, but implies a finding that it was foreseeable that a student could be sexually assaulted.
¶ 19. To recover in tort, a plaintiff must show, in addition to a breach of duty, both causation in fact as well as proximate cause. Richardson v. Methodist Hosp. of Hattiesburg, Inc., 807 So.2d 1244(¶ 16) (Miss.2002). The circuit court held that T.K. failed to show the District breached its duty of ordinary care, and she failed to show causation in fact through a showing of sexual assault. The circuit court also held that even though a consensual sexual act may have occurred, the District had no duty beyond its duty to utilize ordinary care to prevent foreseeable injuries. The District is not held to a standard which requires a guarantee that all students will refrain from any sexual contact. The circuit court correctly reasoned that without a showing of both a breach of duty as well as cause in fact, proximate cause itself cannot lead to recovery. Therefore, even assuming some error in the application of proximate cause, any error would be harmless. There is no merit to this assignment of error.
5. WHETHER THE CIRCUIT COURT ERRED IN ADMITTIÑG EXPERT TESTIMONY OF PAUL DAVEY.
¶ 20. Paul Davey was a master’s level psychometrist and licensed counselor, whose practice included counseling in sexual abuse cases. He was accepted as an expert pertaining to investigations of sexual abuse allegations. He testified, inter alia, that a videotape of T.K. showed her answering questions without evidencing the “trauma” abuse victims typically evidenced. Admittedly, he never interviewed her in person.
¶ 21. At first glance, the reason for admitting this testimony is questionable. T.K. testified and people to whom she made the allegations testified. So, it would seem the circuit court had evidence upon which to base its determination of credibility, without resort to expert testimony. However, T.K. gave differing accounts and recanted her charges at one time. To remedy this defect in the case, T.K. called two experts to testify that her actions were consistent with sexual abuse. To counter that testimony, the District called Davey. Consequently, this case involved dueling experts.
¶ 22. T.K.’s argument goes to the credentials of Davey, not the subject of his testimony. Davey testified that he had “seen” over 2800 children who had been sexually abused, and had testified in an unspecified number of trials involving child sexual abuse. The standard of review for a trial court’s determination of whether an expert witness is qualified to testify on the grounds for which his testimony is offered is abuse of discretion. General Motors *319 Corp. v. Pegues, 738 So.2d 746(¶ 28) (Miss.Ct.App.1999). There was a credible basis for accepting Davey as an expert in the area pertaining to exhibited characteristics of sexually abused children. There is no merit to this argument.
6. WHETHER THE CIRCUIT COURT IGNORED THE OVERWHELMING WEIGHT OF THE EVIDENCE IN FINDING THAT THE DISTRICT REASONABLY INVESTIGATED THE RAPE CHARGES.
¶ 23. T.K. essentially argues that the District erred in not determining that her charges of rape were true. Principal Jaynes was given the task of investigating the rape charges, even though he lacked forensic and law enforcement training. One of T.K’s expert witnesses testified that the District’s procedures did not comply with educational standards, but the record does not indicate T.K suffered any prejudice from those failures. T.K.’s delay in reporting the rape, while understandable, did hinder the gathering of evidence. When she did report the charges, she did so to a relative who was a police officer. There is no allegation that she was prevented from filing criminal charges or that law enforcement personnel were somehow lacking. Moreover, the evidence she presented to the circuit court to buttress her charges was more than the evidence available to the District, i.e., her expert witnesses who testified to characteristics of victims of sexual abuse.
¶24. School districts have a duty to protect students from harm under the ordinary care standard. L.W., 754 So.2d at (¶ 24). Assuming the District’s actions in investigating her charges failed to comport with that duty, her injuries from any sexual assault that already occurred could not have arisen from this investigation. The District had a duty to utilize ordinary care to prevent reasonably foreseeable injuries, but the District did not have a duty to prove T.K.’s claim that she was raped. There is no merit to this assignment of error.
7. WHETHER THE CIRCUIT COURT ERRED IN NOT ENTERING MORE SEVERE SANCTIONS FOR THE DISTRICT’S DISCOVERY VIOLATIONS.
¶25. After T.K. presented her case, and several of the District’s witnesses had testified, it became apparent that the District had not disclosed the name of a parent who complained that no teacher was in proximity to the children who were waiting for their bus. Moreover, this parent had notified the school board within days of the alleged rape. The names of parents who had made such complaints was sought in discovery. The circuit court found a discovery violation occurred, and following post-trial pleadings and a hearing, entered monetary sanctions of $1500 against each of the District’s attorneys, but suspended the sanctions upon a finding that no previous violations had occurred. T.K. asserts that these sanctions were insufficient, and that the circuit court should have struck the District’s answer and entered judgment for T.K.
¶26. A trial court’s decision of what discovery sanctions are warranted is viewed through an abuse of discretion standard. Wood v. Biloxi Public Sch. Dist., 757 So.2d 190(¶8) (Miss.2000). Sanctions that determine the merits of a case are only applied if no less drastic measure will protect the integrity of the judicial process and deter similar discovery violations, and are generally applicable where the failure to disclose arose from a client’s own behavior. Id. at (¶ 9). In this case, it is unclear that the discovery violation was the fault of the District or its *320 attorneys. The attorneys asked school officials to inspect school board meeting minutes to determine what complaints had been made. The District identified the witness in question, but only told T.K. that the witness had complained of her child having to wait for late busses, when in fact the complaint had also been that the supervising adults were not in close proximity to the children. However, the District officials testified that they would have disclosed the full nature of the parent complaint had they been instructed to do so. Given the record, there is not an unequivocal showing that the District or its attorneys intended to deceive, nor is it clear where the fault in failing to disclose arose.
¶ 27. Actual prejudice is not always considered by courts when applying discovery sanctions. Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1391 (Miss.1997). Nevertheless, the discovery violation in this case went to breach of duty and proximate cause. As discussed, T.K. could not have prevailed had she proven breach of duty and proximate cause, because no causation in fact was shown, Therefore, even assuming T.K. had established that the District breached its duty of care and the District should have known bus line supervision was insufficient, T.K. would not have prevailed. The circuit court was the finder of fact. The record affirmatively showed that, as the finder of fact, the circuit court took into account the inconsistencies between the discovery materials and the testimony of the district’s witnesses. Therefore, T.K’s case was not prejudiced, though it appears from the record her attorneys expended considerable effort in locating parents who had similar experiences to the parent who was not disclosed. The circuit court required T.K’s attorneys to brief what they sought in sanctions and held a post-trial hearing to get at the root of why disclosure was incomplete. The circuit court then ruled that striking the answer and confessing judgment was not warranted by the facts. Given the discretionary nature of review, we hold that the circuit court did not err in choosing to impose fighter sanctions than those T.K. requested.
8. WHETHER THE TRIAL COURT ERRED IN PERMITTING SCHOOL BOARD MEMBERS TO TESTIFY IN CONTRADICTION TO ANSWERS TO REQUESTS FOR ADMISSIONS.
¶ 28. In her requests for admissions, T.K. requested the District admit that “sexual contact” occurred. The District denied this request. Yet, she and her alleged attackers were later sent to the alternative school. Two school board members testified regarding their decision to discipline the students. It appears that they accepted Principal Jaynes’ assessment that, while the males denied any sexual contact and T.K. said she was the victim of assault, something did occur in the restroom. T.K. moved that the witnesses be “estopped” from testifying in accord with Principal Jaynes.
¶ 29. In considering T.K’s motion, the circuit court noted over two years transpired from the date of the hearing to the responses to requests for admissions being answered. It further noted that requests for admissions are “lawyer drawn and to a great extent lawyer responded to, and if it were a pure legal issue we were dealing with, I would probably grant your motion, but these are questions of fact.... I will, however, consider these contradictions in the sense ... to impeach the testimony of the witnesses.”
¶ 30. The circuit court’s determination of what remedy or effect was warranted by the differences between the re *321 sponses to the requests for admission and the testimony must be viewed in a discretionary light. See, e.g., Wood, 757 So.2d at (¶ 8). Given that the circuit court was the trier of fact, and its comments show that it took into effect the differences when it weighed the credibility of the school board members’ testimony, an abuse of discretion cannot be found. There is no merit to this issue.
9. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ADMIT THE RESULTS OF T.K’S POLYGRAPH EXAMINATION.
¶ 31. T.K. asserts that the circuit court erred in not allowing her to admit into evidence testimony going to the fact that she had taken, and passed, a polygraph examination in which she was questioned concerning the veracity of the allegation of sexual abuse. Polygraph test results are inadmissible either substantively or to impeach testimony. Humphrey v. State, 759 So.2d 368(¶48) (Miss.2000). There is no merit to this assignment of error.
10. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW.
¶ 32. Following the circuit court’s issuing its order, T.K. moved, pursuant to M.R.C.P. 52, for a particularized findings of facts and conclusions of law. The circuit court denied the motion. A trial court “has technically complied with the mandates of Rule 52 where it makes general findings of fact and conclusions of law although requested by a party to make specific findings.” Lowery v. Lowery, 657 So.2d 817, 819 (Miss.1995). In this case, the circuit court issued a six page opinion and order setting forth in detail its analysis of the case. The opinion listed four elements to the case: duty owed, breach of duty, proximate cause and actual damage. The opinion clearly relates the evidence the circuit court found probative to each issue. The order complies with M.R.C.P. 52. There is no merit to this assignment of error.
¶ 33. THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.