# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01587-COA

**MAULDIN COMPANY**                                        **APPELLANT**

**v.**

**EARNEST TURNAGE**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2018 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PHILLIP LLOYD LONDEREE |
| ATTORNEY FOR APPELLEE: | COREY DANIEL GIBSON |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 08/24/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. After continued mechanical issues with a New Holland tractor that Earnest Turnage bought from Mauldin Company ("Mauldin"), litigation ensued based on Mauldin's failure to properly repair the tractor. The trial court ruled in Turnage's favor and Mauldin now appeals.

### FACTS

¶2. On October 30, 2012, Turnage bought a New Holland tractor from Mauldin. The tractor came with a two-year warranty. Shortly after its purchase, Turnage discovered that

the tractor had a fuel leak that Mauldin repaired.[1]  In August 2014, Turnage sent the tractor to Mauldin for repairs to the power take-off ("PTO") per the warranty.  When the tractor was returned to Turnage, there were issues with the transmission.  On October 21, 2014, Mauldin picked up the tractor from Turnage and left him a "loaner" tractor so he could maintain his chicken houses.  The parties differed regarding the length of time Turnage was allowed to keep the loaner.  Mauldin claimed that it loaned Turnage the tractor for one day.  Turnage claimed that he was to keep the loaner until his tractor was repaired.  He kept the loaner for approximately ten days.  When Mauldin returned Turnage's tractor, it was still not working properly.  Despite Turnage's continued attempts to have Mauldin repair the tractor, Mauldin failed to act.  Because the tractor was not working properly, Turnage said he was required to hire two additional workers to help with his chicken houses.  In February 2016, Turnage paid Deviney Equipment ("Deviney") for repairs to his tractor.

## PROCEDURAL HISTORY

### A.    Mauldin's Complaint for Replevin

¶3.    After a failed attempt by Mauldin to pick up the tractor it had loaned to Turnage, on October 29, 2014, Mauldin filed a complaint for replevin in the Forrest County Chancery Court and requested the return of the tractor, damages, and fees.  Subsequent to a motion by Turnage, the case was transferred to the Smith County Circuit Court on November 4, 2014.  The record does not contain a copy of the order, but the parties are in agreement that the chancellor ordered Turnage to return the loaner tractor.  On June 15, 2015, the case was

---

[1] The record does not contain a complete copy of the repair records and there is conflicting testimony as to whether Mauldin attempted repairs three or four times.

2

enrolled in the Smith County Circuit Court. After presiding over a bench trial, the trial court held that Mauldin failed to present sufficient proof on its claim for damages in the replevin action. Mauldin did not appeal this decision.

## B. Turnage's Counterclaim

¶4. On December 1, 2014, Turnage filed an answer to Mauldin's complaint for replevin. Turnage also filed a counterclaim maintaining that Mauldin was negligent in failing to properly repair his tractor, causing him to incur expenses for repairs and additional labor. Turnage also claimed that he lost profits and was ultimately forced to sell his chicken houses causing additional monetary damages. Turner successfully moved to transfer venue to the Smith County Circuit Court in 2014, but the suit was not enrolled in Smith County until 2015. Turnage then sought an entry of default against Mauldin for failure to respond to his counterclaim and filed a motion for default judgment. In 2016, Mauldin filed a motion to dismiss based on Turnage's alleged lack of prosecution of his counterclaim.

¶5. These motions were not heard by the trial court. Prior to the start of the trial on October 30, 2018, Mauldin filed a Mississippi Rule of Civil Procedure 41(b) motion to dismiss based on lack of evidence and the trial court allowed it to present evidence in support of its motion. The trial court entered an order including "Findings of Fact" and "Conclusions of Law" on December 19, 2018. Turnage was awarded $12,554.19 ($8,054.19 for repairs to the tractor and $4,500.00 for part of the expenses incurred in hiring additional labor). All other claims were denied. Mauldin filed post-trial motions asking the court to (1) reconsider its decision or conduct a new trial (M.R.C.P. 59); (2) make additional findings of fact and

conclusions of law (M.R.C.P. 52(b)); and (3) provide other relief (M.R.C.P. 60). These motions were denied and Mauldin appealed.

## STANDARD OF REVIEW

¶6. "The standard of review of a judgment entered following a bench trial is well-settled." *City of Jackson v. Presley*, 40 So. 3d 520, 522 (¶9) (Miss. 2010). A circuit judge sitting without a jury is "entitled to the same deference accorded to a chancellor, that is, we will uphold the [circuit judge's] findings of fact, so long as they are supported by 'substantial, credible, and reasonable evidence.'" *Id*. (citing *City of Jackson v. Brister*, 838 So. 2d 274, 277-78 (¶13) (Miss. 2003)).

## DISCUSSION

### I.    Whether the trial court erred in denying Mauldin's Rule 41(b) motion to dismiss based on lack of evidence.

¶7.    In responding to Mauldin's complaint for replevin, Turnage counterclaimed for damages arising from the issues with his tractor. At trial, Mauldin moved for dismissal pursuant to Rule 41(b), claiming that Turnage had failed to present sufficient evidence to show causation and mitigation. Mauldin mentions in its argument that the trial court failed to rule on this motion. We disagree. Although the circuit judge did not expressly state that the motion to dismiss was granted or denied, after hearing arguments on the motion, the circuit judge entered an order specifically setting forth the requisite elements of a negligence claim and making findings of fact and conclusions of law that resolved the parties' claims.

¶8.    In a bench trial, a judge ruling on a motion for involuntary dismissal "must consider the evidence fairly, rather than in the light most favorable to the plaintiff." *Century 21 Deep*

4

*S. Props., Ltd. v. Corson*, 612 So. 2d 359, 369 (Miss. 1992). "A judge should grant a motion for involuntary dismissal [during a bench trial] if, after viewing the evidence fairly, rather than in the light most favorable to the plaintiff, the judge would find for the defendant." *Keasler v. Fowler*, 308 So. 3d 441, 443 (¶13) (Miss. Ct. App. 2020). "Where there arguably is evidence that a party might be entitled to a judgment, the court errs in dismissing the case" pursuant to the rule regarding involuntary dismissal. *Braddock Law Firm, PLLC v. Becnel*, 949 So. 2d 38, 49 (¶40) (Miss. Ct. App. 2006) (citing *Aronson v. Univ. of Miss.*, 828 So. 2d 752, 756 (¶14) (Miss. 2002)).

¶9. Mauldin complains that there was no specific evidence of a causal connection between its acts and omissions and Turnage's alleged harms. The outcome of this case does hinge largely on circumstantial evidence, but the Mississippi Supreme Court has held that "negligence may be proved by circumstantial evidence where the circumstances are such as to remove the case from the realm of conjecture and place it within the field of legitimate inference." *Weathersby Chevrolet Co. Inc. v. Redd Pest Control Co. Inc.*, 778 So. 2d 130, 133 (¶9) (Miss. 2001) (citing *Kussman v. V & G Welding Supply, Inc.*, 585 So. 2d 700, 703 (Miss. 1991)). "It is also well settled that . . . when the case turns on circumstantial evidence it should rarely be taken from the [fact finder]." *Davis v. Flippen*, 260 So. 2d 847, 848 (Miss. 1972). As an appellate court, "it is simply not [our] duty to decide the meaning and importance of these facts. That is the function of the [fact finder]." *Weathersby*, 778 So. 2d at 134 (¶12).

¶10. Neither party presented an expert to testify regarding Mauldin's alleged negligent

repair of Turnage's tractor, instead preferring to rely on their own testimony and that of Bobby Streiff of Deviney, who ultimately repaired the tractor. *See Wal-Mart Stores, Inc. v. Johnson*, 807 So. 2d 382, 388 (¶15) (Miss. 2001) ("The general rule in Mississippi is that expert testimony is not required where the facts surrounding the alleged negligence are easily comprehensible to a jury.").

¶11.    When questioned about the problems with the tractor, Turnage testified that Mauldin worked on it four times—once for a fuel leak (that was successfully resolved), the second time for the PTO, and the third and fourth times for the transmission. Turnage also testified that at one point, Richard Mauldin told him that he had left a part out during a prior repair and that caused the tractor to stop working. Turnage said that Mauldin never successfully fixed the tractor, and the tractor was worse after each of Mauldin's attempts at repair. Turnage testified that he did not operate the tractor after the last time Mauldin dropped it off and that prior to sending the tractor to Deviney, the only change was a new starter. Turnage's wife, Lou Wanda Turnage, testified that Mauldin told her husband that a part had been left out and Mauldin would fix the problem caused by the missing part. She also testified that at one point after an ineffective repair, despite being contacted multiple times, it was months before Mauldin sent anyone to see about the tractor. Lou Wanda said that after the last repair, although it was on notice of continued problems, Mauldin never came to get the tractor for repairs.

¶12.    Other witnesses at trial included Richard Mauldin, general manager of Mauldin and who was noted by the trial court as being evasive, and Bobby Streiff, a long-time Deviney

employee.  Excerpts from their testimonies follow.

**Mauldin**

> Q:    Mr. Mauldin, the repairs that you did on the tractor that you sold Mr. Turnage, would you agree that it was a one-of-a-kind repair?
>
> A:    For a tractor that's a year-and-a-half old, yes, it's one-of-a-kind.
>
> Q:    And would you agree that your dealership didn't know how to fix it?
>
> A:    Yes, we knew how to fix it.
>
> Q:    Well, then why didn't you fix it when it was brought to you the first time?
>
> A:    Okay.  We did think that we had it fixed the first time. . . .  We replaced the synchronizers in the transmission, which were damaged and, I believe, from rough shifting.
>
> . . . .
>
> Q:    Mr. Mauldin, if you had left a snap ring off that synchronizer, would it have caused a problem?
>
> A:    It might have, but I don't believe it did.
>
> . . . .
>
> Q:    My question was: If you had left it out, would it have caused a problem?
>
> A:    It's possible, yes.

**Strieff**

> Q:    Based off of what [Mauldin] had to work on, would they had to have removed that clutch pack, as well?
>
> A:    If they worked on the transmission they would have to go remove the clutch pack to get to the transmission synchronizers.

7

Q: And on a tractor with only 550 hours, is it normal to burn up in the condition that this one was?

A: No.

. . . .

Q: Based off of what you saw, would the clutch pack have been in the condition that it was in, had it been properly repaired when it was worked on six months to a year prior to?

A: No.

. . . .

Q: If the oil -- the hydraulic fluid had been properly fixed at Mr. Mauldin's facility before the tractor was brought to your facility, would it have been in the condition it was in when you found it, when you opened that tractor up?

. . . .

A: Definitely not.

Q: If the filters had been changed and repaired when the tractor was at Mr. Mauldin's facility, before it was brought to your facility, would they have been in the condition that they were in when you found them?

A: No.

Q: The clutch packs, both sides were burned up when you found it in Mr. Turnage's tractor, correct?

A: Correct.

Q: If improper shifting would have caused the clutch pack to burn up . . . then one side or the other would have been burnt, correct?

A: Correct.

Q: Both sides would not have been burned, would it?

A:     No.

¶13.    There was no evidence that any company other than Mauldin attempted to repair the tractor before it was taken to Deviney.  Based on the testimony and exhibits, including the examples set forth above, the trial court found sufficient evidence of causation.  In reviewing the ruling of a judge in a bench trial, we "will not disturb his factual determinations where there is substantial evidence in the record to support those findings." *Golleher v. Roberson*, 830 So. 2d 694, 696 (¶5) (Miss. Ct. App. 2002).

¶14.    Mauldin also argues that Turnage failed to mitigate his damages, making much of the fact that witnesses for Turnage, including Lou Wanda, testified that no efforts were made to mitigate damages.  Rather than relying on testimony by non-lawyers regarding a legal theory, we look to trial testimony regarding the actions undertaken by Turnage.  Turnage presented testimony that he had to hire two additional employees to help in the chicken houses because the tractor was not working.  Turnage also testified that the eighteen-month delay between Mauldin returning the tractor and Deviney ultimately repairing it was because he could not afford to have the tractor repaired.[2]  The trial court held that "Turnage attempt[ed] to mitigate his damages by hiring additional labor[]" and that this was reasonable.  We agree.  There is

---

[2] To the extent Mauldin argues that the tractor could have been repaired within the warranty period (thus eliminating the need for payment to Deviney), we find no error with the trial court's ruling that this was not required under the circumstances.  The tractor's factory warranty expired on or about October 30, 2014—approximately a month prior to Mauldin's return of Turnage's tractor.  The warranty contained a clause that extended the warranty period for six months on parts that had been repaired.  Turnage testified that he was unaware of the extended warranty period and Lou Wanda testified that an employee at Mauldin told her the warranty had expired.  Evidence was also presented that Turnage did not initial the page of the warranty that contained the extended warranty provision. *See also* Section V *infra*.

9

no "one size fits all" manner of mitigating damages. As held by the Supreme Court, "the injured party is not precluded from recovery to the extent that he has made reasonable but unsuccessful efforts to avoid loss." *R. McKnight & Son Constr. Inc. v. C & I LLC*, 100 So. 3d 1022, 1029 (¶23) (Miss. Ct. App. 2010) (quoting *Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, 740 (¶12) (Miss. 1999)). And, a lack of funds to mitigate has been held to excuse the party from the requirement. *Id.* at 1028 (¶22) (citing *Tri-State Transit Co. v. Martin*, 181 Miss. 388, 396, 179 So. 349, 350 (1938)).

¶15. Based on the evidence and testimony presented at trial, the trial court found that Mauldin had a duty to properly repair Turnage's tractor. Mauldin was aware that it failed to properly repair the tractor, but failed to attempt additional repairs. Without the use of the tractor, Turnage was forced to hire additional help in order to maintain his chicken houses. And ultimately, Turnage was forced to pay for another dealership to repair the tractor. It was the trial court's role to resolve any conflicting testimony. As the fact finder, the trial court was entitled to believe the party it found to be most credible. Accordingly, we cannot say that the trial court's ruling on these issues was erroneous.

**II. Whether the trial court erred by failing to make sufficient factual findings and denying Mauldin's Rule 52(a) motion for additional findings.**

¶16. The trial court sua sponte entered an order setting forth findings of fact and conclusions of law. Believing the trial court's order to be deficient regarding Turnage's alleged "failure to mitigate and failure to establish [a] specific causal link between any conduct of [Mauldin] and the grievances claimed by [Turnage,]" Mauldin filed a motion for

10

reconsideration in which it requested that the trial court give more specific facts pertaining to the denial of his motion to dismiss.[3]  The trial court denied Mauldin's motion and he appealed.

¶17.    Mauldin has failed to set forth any authority requiring the trial court to provide more specific findings of fact and conclusions of law pursuant to Rule 52(a).  He does point to parts of the record in an effort to bolster his argument and maintains that the trial court's findings do not generally address all of the issues that were before it.  *See Golleher*, 830 So. 2d at 697 (¶6) (quoting *Century 21*, 612 So. 2d at 367) (When a trial court "makes general findings of fact and conclusions of law, [it] has technically complied with the requirements of Rule 52.").  In accordance with the limited standard of review of bench trials, we assess the trial court's findings for substantial evidence.  *Myers v. Myers*, 741 So. 2d 274, 278 (¶13) (Miss. Ct. App. 1998) (citing *Century 21*, 612 So. 2d at 367).

¶18.    Rule 52(a) applies only to bench trials.  *Harmon v. Regions Bank*, 961 So. 2d 693, 700 (¶24) (Miss. 2007).  Although helpful for purposes of appellate review, a trial court is not obligated by Rule 52(a) to make particularized findings of fact and conclusions of law.  *Smith v. Hickman, Goza & Spragins, PLLC*, 265 So. 3d 139, 145 (¶14) (Miss. 2019).  Generalized findings of fact and conclusions of law comply with the mandate of Rule 52(a) even when

---

[3] Although not raised in the briefing before us, Turnage previously filed a motion to strike Mauldin's motion for more specific findings per Rule 52(a) as untimely.  The order was entered on December 19, 2018, and Mauldin filed his motion for reconsideration on January 11, 2019.  This is clearly outside of the prescribed time for filing this motion.  *See* M.R.C.P. 6(b) & (e).  There is no indication in the record that the trial court ruled on the motion to strike—it simply denied all of Mauldin's post-trial motions, making the motion to strike moot.

11

a party (like Mauldin) requests particularized findings. *Id*. The Mississippi Supreme Court previously "explained that when reviewing non-jury cases, an appellate court will assume the trial court made a determination of facts sufficient to support its judgment." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 22-23 (¶33) (Miss. Ct. App. 2012) (citing *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So. 2d 991, 1025 (¶130) (Miss. 1997)). And, where the circuit court has provided a general statement of the relevant facts and general statements of the law underlying its decision, "[p]recedent accepts such a general statement of facts and applicable law as sufficient." *Id.* at 23 (¶33).

¶19.    Mauldin's argument is similar to one presented to us in *T.K. ex rel. D.K. v. Simpson County School District*, 846 So. 2d 312 (Miss. Ct. App. 2003). In *T.K.*, the circuit court provided a six-page opinion and order giving a detailed analysis of the case. *T.K.*, 846 So. 2d at 321 (¶32). T.K. then requested particularized findings of facts and conclusions of law based on Rule 52. *Id.* Finding that the opinion clearly linked the probative evidence to each issue, we upheld the circuit court's denial of the motion. *Id.* In the instant case, the trial court clearly delineated "findings of fact" and "conclusions of law" and, similar to *T.K.*, the trial court's opinion set forth a summary of the facts upon which it relied and the elements of a negligence claim. The trial court also addressed Turnage's duty of mitigation and the facts supporting its decision. As in *T.K.*, we find that the order provides us with an adequate record to review and establishes that the circuit court reviewed the evidence. *See Myers*, 741 So. 2d at 277-78 (¶11) (holding that a general statement of facts and law underlying a decision sufficiently satisfies the rule requiring trial courts to find facts specially and state

separately its conclusions of law, even in the absence of precise recitations of or citations to the applicable law).

¶20. Mauldin also takes issue with the fact that the trial court's order is only six pages long. The order in *T.K.*, discussed above, was also six pages long. *T.K.*, 846 So. 2d at 321 (¶32). In *Pilgrim Rest Missionary Baptist Church*, the Mississippi Supreme Court refused to find error in a five-page order that cited no legal authority where the order adequately stated findings of fact and explained what the chancellor did. *Pilgrim Rest Missionary Baptist Church v. Wallace*, 835 So. 2d 67, 74-75 (¶18) (Miss. 2003). Rather than finding an order defective because its author is succinct, we are tasked with examining the trial court's findings and conclusions to ensure that they explain the court's decision and assessment of the evidence. We must also keep in mind that findings of fact should be limited to the ultimate facts that are required, rather than the evidentiary facts upon which the ultimate facts are based. *Rolkosky v. Rolkosky*, 237 Miss. 89, 99, 113 So. 2d 661, 665 (1959). As set forth in our discussion above, the trial court's six-page order contained all of the findings of fact and conclusions of law necessary for us to conduct our review.

¶21. For the forgoing reasons, we affirm the trial court's ruling on this issue.

    **III.    Whether the trial court erred by denying Mauldin's motion for relief pursuant to Rule 60(b).**

¶22. Mauldin has provided no authority in support of its argument that the trial court erred in denying its Rule 60(b) motion. The Mississippi Rules of Appellate Procedure require that the argument section of an appellant's brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities,

statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). In its opening brief, Mauldin's only reference to Rule 60 is contained in the heading entitled "Issue Two." The argument that follows does not reference or allude to Rule 60(b) or Mauldin's motion. Mauldin's reply brief states only that Turnage failed to respond to its contention that the trial court made a mistake—an argument that is not contained in Mauldin's opening brief. This is clearly not the type of information contemplated by Rule 28(a)(7). The Mississippi Supreme Court and this Court have consistently held that the "[f]ailure to cite any authority is a procedural bar, and [a reviewing court] is under no obligation to consider the assignment." *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005); *see also Jefferson v. State*, 138 So. 3d 263, 265 (¶9) (Miss. Ct. App. 2014) (holding that "[t]he appellant must affirmatively demonstrate error in the court below, and failure to do so waives an issue on appeal"). As Mauldin has failed to supply any legal authority on this issue, we decline to address this assignment of error.

### IV. Whether the trial court erred in denying Mauldin's motion to dismiss Turnage's counterclaim for want of prosecution.

¶23. Mauldin filed a motion to dismiss Turnage's counterclaim for want of prosecution on August 8, 2016. It appears from the record that the motion was set for hearing, but multiple continuances were granted. At least one continuance was requested by Mauldin and three others were agreed to by both parties. The motion was never heard and Mauldin did not reurge the argument prior to or at trial.

¶24. The Supreme Court has held that "[a]s a prerequisite to obtaining review in this Court, it is incumbent upon a litigant that he not only plead but press his point in the trial court."

14

*Allgood v. Allgood*, 473 So. 2d 416, 423 (Miss. 1985). The Supreme Court has also stated:

> Our rule is that a party making a motion must follow up that action by bringing it to the attention of the judge and by requesting a hearing upon it. It is the responsibility of the movant to obtain a ruling from the court on motions filed by him, and failure to do so constitutes a waiver of same.

*Billiot v. State*, 454 So. 2d 445, 456 (Miss. 1984) (citation and internal quotation marks omitted). Mauldin's failure to ensure that its motion was heard equates to a waiver and we will not address this issue.

**V.    Whether the trial court erred in disregarding the warranty and limitation of liability agreement.**

¶25.    Mauldin has also failed to provide authority in support of its argument that the trial court erred in disregarding the warranty and limitation of liability agreement. In its reply brief, Mauldin includes a discussion of the appropriate standard of review rather than any of the proper authority as required by Rule 28(a)(7). Because Mauldin's briefs were completely devoid of legal authority on this issue, we decline to address this assignment of error.

**CONCLUSION**

¶26.    Based on the foregoing, we find that the circuit court properly denied Mauldin's Rule 41(b) motion to dismiss and its Rule 52(a) motion for additional findings. Additionally, as stated above, we are precluded from addressing Mauldin's remaining claims due to waiver (the denial of Mauldin's motion to dismiss Turnage's counterclaim for want of prosecution), and failure to provide proper authority on appeal (the denial of Mauldin's motion for relief pursuant to Rule 60(b) and Mauldin's assertion of error in disregarding the warranty and limitation of liability agreement). The findings of the circuit court are affirmed as to these

15

issues as well.

¶27.    **AFFIRMED.**

  **BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**